MORSE *et al.* v. CITY OF WEST PORT *et al.*, *Appellants.*

Division One, June 6, 1892.

1. **Cities of Fourth Class**: PAVING STREETS: ASPHALTUM. Under Revised Statutes, 1889, section 1592, authorizing the board of aldermen of cities of the fourth class by ordinance to levy and collect a special tax for the purpose of grading, macadamizing, building, guttering, curbing and repairing streets, alleys and avenues, the city is authorized to pave its streets with asphaltum.

2. ——: ——: ——. The word "building" as used in the statute includes "paving."

3. ——: ORDINANCE: PRIMA FACIE CASE. Where a city has general authority to pass an ordinance, its enactment makes out a *prima facie* case that it is a reasonable one.

4. ——: ——: PAVING STREET. The requirement of a guaranty on part of the contractor to keep the work in repair for a period of years in a city ordinance providing for street improvement is a valid provision under a statute authorizing levying of taxes for repairing streets.

*Appeal from Jackson Circuit Court.*

REVERSED AND REMANDED.

*Scarritt & Scarritt* and *W. A. Alderson* for appellants.

(1) Express authority is given by Revised Statutes, 1889, section 1589, to cities of the fourth class to pave their streets. The word "building" used in the statutes includes "paving." (2) The ordinance is not an unreasonable one. The passage of the ordinance for doing the work is of itself a strong presumption that the ordinance was reasonable. *State v. Trenton*, 20 Atl. Rep. 1076. The authorities of a city have a large discretion as to the necessity or expediency of the ordinance they adopt. *Corrigan v. Gage*, 68 Mo. 544. (3) The guaranty provision in the ordinance was authorized.

*Karnes, Holmes & Krauthoff* for respondents.

(1) Municipal powers are to be strictly construed, and "any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." 1 Dillon on Municipal Corporations [4 Ed.] sec. 89. (2) Cities of the fourth class have no power to pave their streets otherwise than with macadam. R. S. 1879, sec. 4942; Laws, 1889, p. 42; R. S. 1889, sec. 1592. (3) The ordinance is unreasonable. (4) The ordinance is void because of the provision for repairs. *People v. Maher*, 9 N. Y. Sup. 94.

SHERWOOD, P. J.—The defendant, the city of Westport, is a city of the fourth class, operating under the general laws of the state. On the thirteenth day of October, 1891, defendant, the city of Westport, duly passed an ordinance authorizing the paving of Warwick boulevard, a street within its corporate limits, with a pavement known as asphaltum. Subsequently thereto, and on the twenty-first day of October, 1891, the said city of Westport, after advertising for bids, duly entered into a contract with the defendant, the Barber Asphaltum Paving Company, to pave said Warwick boulevard in accordance with the terms of said ordinance.

The plaintiffs herein, being property-owners, and owning property along said Warwick boulevard fronting thereon, and being subject to special assessment for the payment of the cost of said paving, instituted this proceeding by injunction, to restrain the city of Westport and the paving company from carrying out the terms of said contract and ordinance, on the ground that under the law said city of Westport had no power to authorize the laying of such pavement on said street.

The defendants filed their joint answer, in which they set up the authority of the city, including the ordinance, contract, advertisement for bids, the award and the confirmation of the contract by the city, and also set up the facts relating to the situation of the city and of the property and property-owners along the proposed improvement, and thereupon the plaintiffs filed their general demurrer to the answer of the defendants on the ground that the answer stated no defense to the cause of action, which demurrer was sustained by the court, and the defendants refusing to plead further the prayer of the petition asking for a permanent injunction was granted, and judgment rendered in accordance therewith.

"The city of Westport is situated contiguously to Kansas City, Missouri, on the south side thereof, and the dividing line between said city of Westport and said Kansas City is the center of a street called Thirty-first street or Springfield avenue, one-half of said street being in said city of Westport and the other half in said Kansas City; said Kansas City is a city organized and existing under a charter authorized by section 16, article 9, of the constitution of the state of Missouri, and has within its boundaries more than one hundred thousand inhabitants, and the city of Westport has a population of several thousand; the streets in said two cities running north and south are generally continuous through both of said cities; said Warwick boulevard in said city of Westport is a street varying from sixty to seventy-five feet in width, the roadway of which between the curb lines is, or is to be, thirty feet in width; said thirty feet in width between the points above mentioned on said street is the part thereof which is to be improved by the asphalt pavement to be laid according to the ordinances and contract referred to; said Warwick boulevard extends north and south from Thirty-fifth

street in said city of Westport through a greater part of said city of Westport; and the said Kansas City aforementioned and said city of Westport have now in progress in the proper courts their respective condemnation proceedings for the extension of said Warwick boulevard north from said Thirty-first street to the northern boundary of Westport, a distance of about four blocks, and through a large portion of said Kansas City to a junction with Grand avenue in said city; most of the property on both sides of said Warwick boulevard in said city of Westport is available and desirable for residence purposes, and the market value thereof averages about twenty-five dollars ($25) per front foot; a number of handsome residences are already built on said Warwick boulevard in said city of Westport, at a value of from six thousand dollars ($6,000) to fifty thousand dollars ($50,000) each; a majority of the citizens owning property and residents in said boulevard have petitioned the mayor and board of aldermen of said city of Westport for the improvement mentioned in the ordinances and contract referred to; the total number of front feet on said Warwick boulevard which is to be paved under said ordinances and contract is about twelve thousand, two hundred and twenty-eight; the owners of twenty-five hundred and twenty-six feet of said total number of feet have joined in the petition to the mayor and board of aldermen for the doing of said work."

The foregoing allegations of fact were made in the answer. At the revising session of 1889, the legislature amended section 4942, Revised Statutes, 1879, by repealing that section and enacting a new section, which was approved and took effect May 18, 1889. Laws, 1889, p. 42. The words of that section, so far as necessary to quote them, are as follows: "Sec. 1. That section 4942 of the Revised Statutes of 1879 be and the

same is hereby repealed and a new section in lieu thereof enacted, as follows: Sec. 4942. The board of aldermen shall have power, by ordinance, to levy and collect a special tax on the owner or occupier of the property, lot or lots on any street, lane, avenue or alley within such city, for the purpose of grading, making, paving, guttering, curbing and repairing streets, alleys, avenues, crossings or sidewalks in front of or along the same.''

Section 4942, of which the section just quoted is amendatory, is just like that in the use of the words, ''for the purpose of *grading, making, paving, guttering, curbing and repairing* streets, alleys, avenues, crossings or sidewalks in front of or along the same.'' The chief object of the amendatory act seems to have been to give justices of the peace, to a certain extent, concurrent jurisdiction with the circuit court in suits on special tax bills. Subsequent to the passing of the amendatory section, and during the same revising session, the legislature passed an entirely new section revising the laws of the state in respect to cities of the fourth class, a section which makes no reference to previous legislation, the chief words of which section, so far as necessary to quote them, are the following: ''Sec. 1592. The board of aldermen shall have power, by ordinance, to levy and collect a special tax on the owner or occupier of the property, lot or lots on any street, avenue, alley, gutter and sidewalk, within such city, for the purpose of *grading, macadamizing, building, guttering, curbing and repairing* streets, alleys, avenues and sidewalks, in front of or along the same; and, when such work shall by the board of aldermen be ordered to be done, the same shall be done in the manner and with the materials to be designated in such ordinance.'' R. S. 1889.

A subsequent portion of the same section uses these words: ''And all special tax bills issued as herein

provided for special assessments for paving, macadamizing, curbing, guttering, grading, excavating, building and repairing streets, alleys, avenues and sidewalks, as well as sewers, shall be assignable."

### OPINION.

I.   The questions presented are:  *First*, whether the city of Westport, being a city of the fourth class, was authorized by law to pave its streets with asphalt; and, *second*, whether the ordinance, providing for that improvement, was invalid by reason of being unreasonable.

In defining the verb *"pave,"* Webster defines it to mean:  "To lay or cover with stone, brick or other material, so as to make a firm, level or convenient surface for horses, carriages or persons on foot, to travel on; to floor with brick, stone or other material, as to *pave* a street; to *pave* a court."  International Dictionary.

When defining the word *"build,"* the same authority does so thus:  "To erect or construct, as a fabric or edifice of any kind; to form by uniting materials into a regular structure; to fabricate; to make; to raise."

The same author defines the word *"construct:"* "To put together the constituent parts of (something) in their proper place or order; to build; to form; to make."  And he defines *"make"* as meaning:  "To form of materials; to cause to exist in a certain form; to construct; to fabricate."  So that we find, when used with reference to streets, the word *"build"* may well be regarded as a synonym of the word *"make,"* or of the word *"pave."*

That the legislature regarded *"build"* as a synonym of *"pave"* or, at least, as including that word

within its meaning, is evident from the second quotation we have made from the section in question, where the word *"paving"* is used. To hold that the legislature intended to restrict cities of the fourth class to that kind of paving known as *macadamizing*, is not only to deny to the word *"building"* its ordinary meaning, but to go further and to deny to it any meaning whatever, which would be the case if the construction contended for by plaintiffs were allowed to prevail. But to allow such a contention would be going counter to a very familiar rule of construction which accords, if possible, some effect to every word in a statute. We shall, therefore, hold that the city of Westport had full and general authority to pave her streets with asphalt as provided for by the ordinance involved in this controversy.

II.   But whether the city, though having *general* authority to *construct, build, make or pave* streets in the manner indicated, had any authority to do so in this particular instance, is brought in question by the plaintiffs, upon the ground that the ordinance is unreasonable.

On this point it may be observed, that the authorities of a city are invested with a large discretion in determining the necessity or expediency of ordinances they shall adopt; and, when those powers are exercised within the bounds of reason, and apparent necessity, they should not be held null by the courts. *Corrigan v. Gage*, 68 Mo. 541.

And where, as here, it must be conceded that the municipal corporation has the general power to pass the litigated ordinance, the mere passage of the ordinance makes out a *prima facie* case for the validity of the ordinance, so far as concerns any question of unreasonableness; the presumption is in favor of the exercise of the power by the city authorities, as being a

reasonable and legitimate exercise of such power. When the courts are called upon to exercise the judicial power in declaring a municipal ordinance unreasonable, they will make such a declaration only when the *prima facie case* made by the passage of the ordinance is overcome in the most satisfactory manner. *State v. Inhabitants of Trenton*, 20 Atl. Rep. 1076.

In the case at bar, taking, as we must, the allegations of the answer as admitted by the demurrer to be true, we discover nothing in those allegations of fact which overcomes the presumptively correct action of the city authorities.

III. The plaintiffs also make contention that the ordinance is void, because it requires that "said work shall be executed with a guarantee to keep and maintain the same in a state of perfect repair for a period of five years from and after the completion and acceptance of the same." But it will be observed that the section of the statute under consideration gives express authority for levying taxes for *repairing* streets, etc., and this provision fully answers that contention.

The case of *People ex rel. v. Maher*, 9 N. Y. Sup. 94, does not militate against this view, because there the charter distinctly provided that the repairing should be charged against the city. It would seem to be the part of wisdom to require the contractor to give such a guarantee as the ordinance requires, as this would tend to stimulate him to do faithful and honest work; such a provision is clearly in the interest of and for the protection of the property-owners.

Holding these views, we reverse the judgment, and remand the cause, with directions that if the facts turn out as admitted by the demurrer, the petition of plaintiffs be dismissed. All concur.