MORSE et al. v. WESTPORT et al., *Appellants.*

In Banc, December 1, 1896.

1. **Municipal Corporation:** FRAUD. A city may be shown by proper evidence to have acted fraudulently.

2. ———: ———. Where a city has power to pass ordinances for street improvements, the fact that many are enacted about the same time in view of an impending change of the charter does not tend to prove fraud in the municipal action.

3. ———: STREET IMPROVEMENT: ORDINANCE. An ordinance to improve with macadam and curbstone a street in Westport, Missouri, at a maximum cost of $2.10 per front foot is not unreasonable.

4. **Ordinance, Unreasonableness of:** JUDICIAL ACTION. *Quaere,* whether the judiciary may properly declare a municipal ordinance void because unreasonable, where the ordinance was enacted in pursuance of an express grant of power.

MACFARLANE, BRACE and ROBINSON, JJ., *dissenting.*

*Appeal from Jackson Circuit Court.*—ROBERT E. BALL, ESQ., Special Judge.

REVERSED AND REMANDED.

The following statement is taken from one prepared by Judge MACFARLANE during the progress of the cause in the supreme court. It sufficiently presents the principal facts on which the judgment is based, all others deemed material being mentioned in the opinion of the majority of the court:

The suit is to restrain the defendants, the city of Westport, its engineer and board of public improvements, from letting contracts under two ordinances, to macadamize and curb two blocks of McGee street, from 38th to 40th streets in said city. A temporary injunction was granted, which after a hearing upon

the merits was made perpetual. From the judgment defendants appealed.

As ground for relief plaintiffs, who were the owners of property on said street between 39th and 40th streets, charged that the amount of the expense of such work, that would be apportioned to and charged against the property owned by them, fronting on said street, would be oppressive and out of all just and reasonable proportion to the value of said property, and that the ordinances requiring said work were utterly unreasonable, and that the doing of said work would be of no public utility or public benefit whatever, and that the same would be a great, unreasonable and unnecessary burden upon their property.

The case was tried by the chancellor and in a finding and opinion made on rendering judgment, the main facts bearing upon the issue were stated as follows:

"The ordinances provide for the curbing and macadamizing of McGee street from 38th to 40th streets. McGee street is located in the eastern part of the city and extends from the alley, just north of 35th street, four blocks south of the northern city limits, south to a tract known as 'Southmoreland,' and ends a short distance south of 44th street. It is the third street east of Main street which is the thoroughfare from Westport into Kansas City. It is one block east of Warwick Boulevard, a thoroughfare paved with asphalt from 35th street to some distance south of 40th street; 35th, 36th, 37th, 38th and 40th streets running east and west are paved between McGee and the Boulevard on Main street. McGee is paved and curbed from 38th street to 35th street, and from 40th south these improvements are about to be made. From 40th north to 37th there are no buildings. From 37th north to the end of the street there are four residences. South

of 40th on McGee and on Oak street, the next street east, are some fifty or more residences. Practically the entire travel to and from that section is between Westport and Kansas City; and the most ample and convenient facilities for that purpose are afforded by way of 40th street and the Boulevard or Main street. Those facilities would not be appreciably increased by the improvements proposed. So far from the necessities of that travel demanding this improvement, McGee street, between the points in question, would be only casually and to a slight extent used at all. The grading which is about completed between those points will be for aught that appears abundantly sufficient for the present and for some time to come. All of the abutting property is vacant and unproductive, and there is little or no demand for it. It will not be enhanced in available value, if enhanced at all, to anything like the cost of the improvement. Some of it has already been abandoned by the owner by reason of assessments for improving 38th street, and on account of the estimated additional cost of grading McGee street. The total assessed value of all the property along the line of the proposed improvement is $7,040; while the cost of the improvement, including grading, will be over $7,600. A part of the newly graded street has a fill of considerable depth, and the evidence shows that it would not be safe to curb and pave it within a year at least after the fill has been made.''

Between fifty and sixty witnesses were examined on the trial, their printed evidence making about seven hundred pages of the record. The evidence bearing upon the public utility of the improvement, the value of the property affected and the benefits to the property to be charged therewith, was, as is usual, conflicting. The chancellor was familiar with the surroundings

and had the witnesses before him; he was, therefore, much better prepared to draw conclusions of fact from the evidence than we can be. In such case, when the evidence, as in this case, is so evenly balanced as to require careful weighing, in order to draw correct conclusions therefrom, this court should defer to the finding of the chancellor. *Johnson v. Duer*, 115 Mo. 375.

We will therefore accept and adopt the finding of the chancellor that "so far from the necessities of that travel ·demanding this improvement, McGee street, between the points in question, would be only casually and to a slight extent used at all. All the abutting property is vacant and unproductive and there is little or no demand for it. It will not be enhanced in available value, if enhanced at all, to anything like the cost of the improvement. The total assessed value of all the property along the line of the proposed improvement is $7,040."

*R. J. Ingraham* and *C. O. Tichenor* for appellants.

(1) We admit that courts can declare ordinances void because unreasonable. But courts exercise this power reluctantly and with great care, and only when the plaintiff makes out his case clearly and beyond doubt. If this were not so no legislative action of a city could be relied on. If an ordinance is held void because witnesses say it, in their judgment, is unreasonable, then all legislation of cities ought to come from courts in the first instance, in order to save trouble, for this amounts to judicial management of towns and cities. *Butler v. Passaic*, 44 N. J. L. 171; *Com. v. Robertson*, 5 Cush. 438; *State v. Newton*, 20 Atl. Rep. 1078; *Haynes v. Cape May*, 52 N. J. Law, 180; *A Coal-Float v. City*, 112 Ind. 18; *City v. Braden*, 130 Ind. 158; *Ex parte Smith*, 38 Cal. 709; *Van Boalen v. Peo-*

*ple,* 40 Mich. 258; 2 Beach on Pub. Corp., secs. 514, 994; 2 Dillon, Mun. Corp. [3 Ed.], secs. 420, 686; *Kansas City Grading Co. v. Holden,* 107 Mo. 305; *Cape Girardeau v. Riley,* 72 Mo. 220; *McCormack v. Patchin,* 53 Mo. 33; *St. Louis v. Green,* 70 Mo. 562; *Philadelphia v. Evans,* 139 Pa. St. 483. (2) It is a matter of general notoriety that there are miles of macadamized road in Jackson county and that the county is still building them. It appears from the evidence that a road in the territory now within Westport, was macadamized by the county and the land owners before it was taken in by the city. Does it not seem absurd to say that an ordinance is unreasonable and void passed by a city, to pave a street with this cheapest pavement, when the county is doing the same kind of work on its roads? (3) An attempt was made below to show, by what was said, that the motives of the aldermen in passing the ordinances were not right, and that therefore in some way the ordinances were void. A city council is a little legislature, and their ordinances within the power intrusted, have all the force of acts of the legislature. *State v. Debar,* 58 Mo. 395; *Long v. Taxing Dist.,* 7 Lea, 134; *Quinette v. St. Louis,* 76 Mo. 402; *Des Moines Gas Co. v. Des Moines,* 44 Iowa, 505. And courts will not consider the motives which lead to the passage of an act. *Soon Hing v. Crowley,* 113 U. S. 710. (4) The ordinances were objected to because they were not sufficiently definite. On this point we refer to *Gilmore v. Utica,* 131 N. Y. 26; *Sheehan v. Gleeson,* 46 Mo. 100; *Cole v. Skrainka,* 105 Mo. 303; *State ex rel. v. Francis,* 95 Mo. 50.

*Hugh C. Ward, Wash Adams,* and *Karnes, Holmes, & Krauthoff* for respondents.

(1) There is no bill of exceptions in this case. The time allowed for the filing of the bill of exceptions

expired September 20, 1893, and the bill of exceptions is out of time. *Dorman v. Coon,* 119 Mo. 68; *Danforth v. Railroad,* 123 Mo. 196; *Fulkerson v. Murdock,* 123 Mo. 292; 2 Am. and Eng. Ency. of Law, p. 222; *Morris v. Brannen,* 15 S. Rep. (Ala.) 865; *Bank v. Smith,* 35 Pac. Rep. (Okl.) 35 Pac. Rep. 955; s. c., 37 Pac. Rep. 828; *United States v. Carr,* 61 Fed. Rep. 802; *Brush, etc., Power Co. v. Grosch,* 40 Pac. Rep. 933; *McReynolds v. Jones,* 30 Ala. 101; *State v. Duckworth,* 68 Mo. 156. (2) Speaking in general terms, the authorities of a city may be said to have a large discretion as to the necessity or expediency of the ordinances which they adopt. But their powers in this regard are by no means omnipotent; otherwise the citizen would be without remedy or redress. These powers must be exercised within the bounds of reason and apparent necessity; they must not impose a burden without a benefit and the reasonableness of their exercise is a fit subject of inquiry. *Corrigan v. Gage,* 68 Mo. 541; *White v. Railroad,* 44 Mo. App. 540; Beach, Pub. Corp., sec. 90, 512 g; *Soon Hing v. Crowley,* 113 U. S. 703. Judge Dillon gives it as his opinion that where the motives of the board of aldermen are material and relevant, they may be inquired into. 1 Dillon, Mun. Corp. [4 Ed.], sec. 311 note; *Glasgow v. St. Louis,* 107 Mo. 198, 203. (3) It is worthy of note in this connection that neither the mayor who approved the ordinance, nor the alderman who voted for it, although their motives were impugned, appeared as witnesses in the case. This raises a presumption against them. *Ins. Co. v. Smith,* 117 Mo. 261. In equity suits the court may discard such parts of the evidence as may have been erroneously admitted in the trial court. *Barrett v. Davis,* 104 Mo. 549. Conversely the court may consider such evidence as was erroneously excluded. (4) This is a case in which this court should defer very

largely to the finding of the trial judge. The record does not show it, but as a matter of fact, the trial judge, accompanied by counsel, visited McGee street. The case is of that character which a judge familiar with the surroundings is most competent to decide. The financial situation, the prospective growth of McGee street, the topography of the country, the character and appearance of the witnesses, are all matters which enter largely into the proper determination of the issue, and yet can not be reproduced or shown by a printed record. (5) Under the law, county roads are paid for out of a general fund and are not charged as a lien against adjacent property. If Westport will pay for the improvement of McGee street in the same manner that Jackson county pays for its roads, the plaintiffs in the case at bar will certainly not object. It will not be seriously contended that Jackson county has as many roads as Westport has streets. The county court improves the main thoroughfares and the by-paths and lanes are left in their natural state. (6) On the whole evidence, this case should be affirmed.

BARCLAY, J.—The leading facts appear in the statement first prepared by our learned brother MACFARLANE, which will be printed as an introduction to this opinion.

It may, however, be properly added that the proposed street improvements were to cost $5,274, making the special tax amount to no more than $2.10 per front foot, at any part of the improved street. The local municipal body had by ordinance ordered the improvements. The injunction granted in this cause in the circuit court put a stop to them.

It will not be needful on this occasion for the court in banc to go into the question whether or not the judiciary may properly declare void, because unreasonable,

any ordinance duly passed by the municipal body, in pursuance of a definite and express legislative grant of power to impose special taxes for street improvements. For the majority of our number hold, that, even conceding the propriety or reasonableness of the exercise of the taxing power by the city (for the improvement of highways therein) open to review by the courts, there would yet be no difficulty in reaching a judgment in the actual case at bar. Surely the particular ordinance now under review is not an unreasonable exhibition of municipal power.

The fact that many ordinances were enacted, about the same time, for improvements similar to those in issue in this case is wholly irrelevant. The learned special judge rightly excluded that fact at the trial. It may well be that the other ordinances were requested by all the property holders affected thereby. Each ordinance may be intrinsically just and necessary. Moreover, the reasonableness of each and every one of said enactments could not, we apprehend, conveniently be gone into, in the present suit. Nor does it matter (so far as concerns the right to make this particular improvement) that a change in the charter was impending, so long as the municipal power to make the improvement still remained, and was regularly exercised.

Acts of a city, no doubt, may be shown to be fraudulent by its official enactments, where such proof is competent and relevant to some proper issue to be tried. But the mere passage of a large number of ordinances for street improvements, in anticipation of a change of law (which would necessitate a change of procedure in regard to those improvements) is not of itself any proof of fraud on the part of these municipal authorities.

The improvement proposed for McGee street was

of the simplest character—a mere surface of ordinary macadam on the roadway, and a curb or margin of stone. It would be hard to suggest a cheaper or more primitive effort to put the street into condition for use as a thoroughfare. The contemplated expense was not to exceed $2.10 per front foot along the whole street affected by the ordinance. At some points the tax was to be less than the figures named. Such an expense can not justly be held unreasonable, unless on the theory that there should be no improvement of that part of the street at all, at the present time. To so hold would be to put a judicial veto upon the municipal powers of Westport in regard to the present improvement of McGee street, and to subject all future ordinances of every city (desiring such simple improvements) to the hazard of a similar judicial veto.

In *Morse v. Westport* (1892) 110 Mo. 502 (19 S. W. Rep. 831) the first division of this court had to consider an ordinance of this very city, providing for an asphaltum pavement on Warwick boulevard—an avenue parallel to (and not many blocks distant from) the McGee street mentioned in this case. In the former suit the ordinance was attacked as unreasonable; but the attack was not successful. The ordinance was approved. Yet in that case (as appears from the abstracts and statements therein) the asphaltum street pavement was to cost $2.50 per square yard, or more than $4 per lineal foot, to be charged as a special tax against the adjacent property. While in the case at bar the proposed cost at no point of the improvement is to be in excess of $2.10 per front foot.

The ordinance here in question should not, we think, be held or considered unreasonable, whatever view may be entertained as to the power of the courts to go into that subject.

We are hence of opinion that the judgment should

be reversed and the cause remanded for such further proceedings as may be in conformity with this opinion. GANTT, SHERWOOD and BURGESS, JJ., concur. BRACE, C. J., MACFARLANE and ROBINSON, JJ., dissent.

MACFARLANE, J. (*dissenting*).—Plaintiffs based their right to relief upon two grounds: *first*, that the cost of the improvement to be charged against their property would be oppressive,. and out of all just and reasonable proportion to its value, and that the ordinances requiring the work would be of no public utility or public benefit whatever, and that the same would be a great, unreasonable and unnecessary burden upon their property; *second*, that the ordinances were not passed in the exercise of fair and honest judgment, but arbitrarily, and with the purpose of forestalling an amendment to the charter curtailing the powers of the council, which had been passed by the general assembly of the state, but had not yet become operative.

The questions are these: *first*, are ordinances of the city of Westport providing for the improvement of its streets open to direct attack as being arbitrary and oppressive, and, if so, *second*, are these ordinances of that character?

I.   The city of Westport, under its charter, had power, "by ordinance, to levy and collect a special tax on the owner or occupier of the property, lot or lots, on any street, * * *, within such city, for the purpose of grading, macadamizing, * * * curbing" the same, and to require the work to be done "at the owner's or occupier's expense, and collected by special tax-bills, which shall be a lien on the property and shall be collected as provided by ordinance." R. S. 1889, sec. 1592.

The ordinances in question require the improve-

ment, when completed, to be paid for "in special tax bills issued against and upon the property charged therewith according to law."

No question is raised in respect to the power of the city of Westport, or of the regularity of the action of the municipal assembly in passing the ordinances, or of their sufficiency in form and substance to accomplish the purposes intended.

No proposition of law is better settled in this state, or receives more general recognition in the courts of this country, than that, in determining what street improvements shall be made, and what property will be benefited thereby, in fixing benefit districts and apportioning the tax throughout the district, the discretion of the municipal legislative authorities is conclusive upon the courts. Where legislative powers are delegated to a municipal corporation, its discretion, within the legitimate sphere of its authority, is proportionately as wide as is a like discretion possessed by the legislature of the state, "and as free from outside interference, and that discretion is not subject to judicial revision or reversal." *State ex rel. v. Schweick-ardt*, 109 Mo. 511, and cases cited.

The authority was, under its original charter, clearly conferred upon the council of the city of Westport to require the improvement of its streets, to determine which of them should be improved, the character of the improvement to be made, whether the adjacent property would be benefited thereby, and the amount of such benefits, and, for the purpose of paying the cost, to charge against such property the amount of such benefits. Its determination of these questions, in the exercise of an honest judgment and discretion, can not be interfered with by the courts, though it appear from the evidence that the improvements were not, in fact, demanded by the public, and

the benefits were not a fair equivalent for the charges exacted. It is true in some instances great injustice may be done to property owners, yet the remedy must be sought from the legislature, by securing limitations on the powers of the council; the courts are given no power to interfere with the judgment or discretion of the legislative department of the state when exercised within its proper sphere.

It is true that the whole theory of local assessments is, that the improvement for which they are levied affords remuneration to the property owner in the way of benefits, and to go beyond the limit of compensation in making assessments would be to exceed the power of taxation; yet the honest legislative action of the council raises a conclusive presumption that the benefits received from the improvements will equal the charge imposed. The law presumes that the council has made careful investigation before it acted. To say that the courts have the right of review would substitute their discretion for that of the legislature, and would practically deprive the city of the legislative powers conferred upon it.

But where it is manifest that the action of such legislative bodies in these matters is arbitrary and is not influenced by honest judgment, and it results oppressively to the citizen the courts, if timely application is made, should not hesitate to interfere and grant relief. In such case the action does not fall within the legitimate delegated powers, but is rather an arbitrary abuse of the power intended to be conferred, and a fraud upon the taxpayer.

Thus it was held by this court that a city ordinance was unreasonable, arbitrary and oppressive, which required, at the cost of adjacent property, the construction of a sidewalk in an uninhabited portion of the city and disconnected from any other street or side-

walk. *Corrigan v. Gage*, 68 Mo. 541. This decision has been frequently cited in subsequent opinions. The oppressive character of the requirement of the ordinance demonstrated that the council acted arbitrarily and not in the exercise of fair and honest discretion.

An ordinance which authorized the cost of grading the section of a street to be charged not only against the property fronting on that section, but also against property fronting on another section which had already been graded at the cost of that property exclusively, was held so obviously unjust that it could not be sanctioned. *Halpin v. Campbell*, 71 Mo. 494.

The principle that courts will relieve against the abuse of discretionary powers of legislative bodies of municipalities has been affirmed and recognized by this court in many cases. *St. Louis v. Weber*, 44 Mo. 547; *Cape Girardeau v. Riley*, 72 Mo. 224; *Tarkio v. Cook*, 120 Mo. 8; *Copeland v. St. Joseph*, 126 Mo. 431; *St. Louis v. Russell*, 116 Mo. 258; *Kelly v. Meeks*, 87 Mo. 401.

It is almost impossible to find a leading case in any of the courts of this country, which passes upon the question of the discretionary powers of city councils in respect to assessment of benefits to pay for public improvements, that does not restrain them to the exercise of judgment and discretion, and that does not recognize the power of the courts to interfere when it manifestly appears that judgment has not been exercised but arbitrary action has been substituted therefor. *Thomas v. Gain*, 35 Mich. 162; *Stuart v. Palmer*, 74 N. Y. 189; *Lightner v. Peoria*, 37 N. E. Rep. 71; *Speer v. Mayor*, 85 Ga. 57; *Washington Avenue*, 69 Pa. St. 364; Cooley on Taxation [2 Ed.], p. 661; *State v. District Court*, 33 Minn. 306.

II. The court finds from the evidence in this case that the improvements contemplated by the ordinances

are not necessary for the public convenience and comfort and that the property will not receive benefits therefrom equal to the costs charged against it.   In these matters the determination of the council otherwise, if made in the exercise of an honest judgment and discretion, must be taken as conclusive and binding upon us.

But it is insisted that this record shows that these ordinances were passed arbitrarily and not in the exercise of that judgment and discretion the legislature intended the council should exercise and which the courts presume was exercised, and will operate oppressively to plaintiffs, and as a fraud upon their rights.

Westport is a city of the fourth class and has a population of four or five thousand, and when these ordinances were passed there was, under the charter, no limitation on the power of the council in respect to the improvements of streets.   R. S. 1889, sec. 1592.

On the fifteenth day of March, 1893, an act of the general assembly of the state was approved which amended said section 1592, and provided "that no street   *   *   *   shall be   *   *   *   macadamized at the expense of property-holders   *   *   *   unless a a majority of the resident real estate owners, in front feet,   *   *   *   shall petition" therefor. Acts of 1893, pages 107–109.   This act took effect June 21st, 1893.

Upon the trial plaintiff offered evidence which showed that the council, by which these ordinances were passed, held its first meeting April 10th, 1893. At that meeting the mayor informed the council that the amendatory act had passed and would soon become a law, and advised that ordinance for street improvements be at once passed.   It was also shown that between March 16th and July 5th, 1893, the council passed and the mayor approved ninety-six ordinances

for the improvement of streets in said city, making about five miles of street improvements, the cost of which would amount to about $300,000. It was also shown, and indeed is a matter of history, that, at that time, there was great stringency in the financial affairs of the country, and it was also shown that real estate in Westport was much depreciated in value. All this evidence was deemed inadmissible by the court, and was not considered in reaching its conclusion.

This evidence, taken in connection with the further facts, as found by the trial court, that the entire cost of these improvements, including the grading of the streets, would equal the assessed value of the property charged therewith, and that the property would not be, in fact, enhanced in value to an amount equal to the cost of the work, convinces us that the ordinances were passed, not in the exercise of the fair and honest judgment of the city council, but arbitrarily and with the intention of forestalling and defeating the limitation of power contained in the amendatory law.

The unlimited power contained in the original charter gave great opportunities for unjust and oppressive legislation. As before said, the remedy for such oppression was with the legislature and not with the courts. We must assume that evils, of the character complained of, resulted under the operation of the old charter, and that by the amendment the legislature intended to correct those evils and to give the property owners a voice in determining what streets should be improved, and to take from the council a portion of its unlimited power in that respect. While the amendment had not become operative as a part of the charter, no other act of the legislature was necessary to make it so. The legislature had already condemned the abuse of power under the existing charter and its voice should have been respected by the council. We can but

regard the action of the council, judging from the great numbers of ordinances passed, and their oppressive character as evidenced by these, that it was not actuated by that fair and honest judgment which should conclude the courts. The ordinances can only be characterized as arbitrary, oppressive, and an abuse of the taxing power, and as operating as a fraud upon the tax-payer.

But it is insisted that evidence was not admissible for the purpose of impugning the motives and good faith of the council in passing the ordinances.

That courts can not inquire into the motives of the legislative department in the enactment of laws is well settled law. Such an inquiry would have the effect of subordinating the legislature to the courts. Cooley, Cons. Lim., *186 (5 ed. 223).

But, says Judge Dillon: "Municipal bodies, like the directories of private corporations, have too often shown themselves capable of using their powers fraudulently, and for their own advantage or to the injury of others. We suppose it to be a sound proposition that their acts, whether in the form of resolutions or ordinances, may be impeached for fraud at the instance of persons injured thereby." 1 Dill. Mun. Corp. [4 Ed.], sec. 311. See *Glasgow v. St. Louis*, 107 Mo. 203; *State ex rel. v. Cincinnati Gas, etc., Co.*, 18 Ohio St. 262.

But we think the motive of this council in passing these ordinances is fairly inferable from the ordinances themselves, the number of ordinances passed about the same time, the powers contained in the old charter and the limitations of power in the amendment. It is said: "The rule is general with reference to the enactments of all legislative bodies that the courts can not inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts,

are inferrible from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be, to accomplish that which follows as the natural and reasonable effect of their enactments." *Soon Hing v. Crowley*, 113 U. S. 703.

Under this rule we must conclude that the motive of the council was to avoid the effect of the amended charter rather than to accomplish what was regarded as necessary for the good of the municipality. It is manifest that the council never determined the case on the principles of taxation.

This being an equity case, triable by the court, the evidence may be considered, though it was rejected by the trial court. The evidence, except that tending to prove the statements made by the mayor, consisted of a public law, and the records of the council, evidence which could not probably have been rebutted. I regard the evidence as being ample to prove the arbitrary action of the council and so do not deem it necessary to remand the cause for further hearing. In my opinion the judgment should be affirmed. In this opinion BRACE, C. J., and ROBINSON, J., concur.