## BROUGHAM v. KANSAS CITY et al.

(District Court, W. D. Missouri, W. D. February 24, 1920.)

### No. 221.

1. CONSTITUTIONAL LAW ☞42—DISCRIMINATION BETWEEN RESIDENT OWNERS ON BUSINESS AND RESIDENCE STREETS AS TO REMONSTRANCE AGAINST PAVING CANNOT BE COMPLAINED OF BY NONRESIDENT.

That a city charter gives resident owners no right of remonstrance against the paving of business streets, as is given in the case of residence streets, cannot be complained of by a nonresident owner, who is not given any right of remonstrance in either case, even though resident owners testify that they would have remonstrated, if given the opportunity.

2. CONSTITUTIONAL LAW ☞232, 290(3)—MUNICIPAL CORPORATIONS ☞297(1)— CHARTER NOT AUTHORIZING REMONSTRANCE BY OWNERS AGAINST PAVING NOT UNCONSTITUTIONAL.

Kansas City Charter, § 3a, as amended in 1910, invades no rights under the United States Constitution, in authorizing the paving of the streets to which it refers, without giving property owners any right of remonstrance.

3. MUNICIPAL CORPORATIONS ☞269(2)—CHARTER HELD TO AUTHORIZE PAVING OF STREETS AS BUSINESS STREETS, INDEPENDENT OF THEIR PRESENT STATUS.

Kansas City Charter, § 3a, as amended in 1910, providing a special mode of proceeding when it is proposed to improve a street "as a business street," authorizes the board of public works and city council to improve and pave certain streets as business streets, independently of their strict actual present status as such.

4. EVIDENCE ☞48—COURT WILL NOT DISREGARD ITS OWN KNOWLEDGE OF CONDITIONS.

The court, in determining whether the authorities of Kansas City acted arbitrarily and unreasonably in improving and paving a street as a business street, will not leave out of mind the knowledge of local conditions which it has in common with all other citizens of that city.

5. MUNICIPAL CORPORATIONS ☞278(½)—IMPROVING STREET AS BUSINESS STREET NOT ABUSE OF DISCRETION.

The board of public works and city council of a city held not to have acted arbitrarily, unreasonably, and oppressively in ordering the paving as a business street of a part of a street, where the part of the street already paved was a business rather than a residential street, and the improvement was a natural extension of that already existing.

6. MUNICIPAL CORPORATIONS ☞473—ASSESSMENT OF BENEFITS NOT RENDERED VOID BY SPECIAL CASES OF LARGE ASSESSMENTS.

In determining whether the cost of paving a street and the tax bill issued therefor were so grossly out of proportion to the resulting benefit and to the value of the property assessed as to make them unreasonable, confiscatory, and void, and to amount to an unlawful taking of the abutting property, the fact that, in the case of certain lots having a large frontage on the street, the assessments were very large, could not affect the proceeding as a whole.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

7. MUNICIPAL CORPORATIONS ⬤⟶484(3)—SALABILITY OF PROPERTY IS NOT TEST OF BENEFITS FROM PAVING.

The salability or nonsalability of property assessed for street paving, especially during a time when the real estate market is notoriously dull, is not a true criterion of the benefits to the property from the improvement.

8. MUNICIPAL CORPORATIONS ⬤⟶484(1)—ASSESSMENT FOR BENEFITS NOT TO BE LIGHTLY SET ASIDE FOR ABSENCE OF BENEFITS.

Street paving assessments against abutting property, apparently regular, should not be lightly set aside, because of varying opinions as to the existence of benefits; this being confided to official judgment and discretion.

In Equity. Suit by Thomas H. Brougham against Kansas City, Mo., and another. On final hearing. Decree for defendants.

W. C. Scarritt, of Kansas City, Mo., for complainant.

A. F. Smith, Asst. City Counselor, and Clarence S. Palmer, both of Kansas City, Mo., for respondents.

VAN VALKENBURGH, District Judge. This court acquires jurisdiction of this case by reason of diversity of citizenship; the complainant being a citizen and resident of the state of New Mexico, and the owner of certain land within the corporate limits of Kansas City, the same being a part of the northwest quarter of the southeast quarter of section 22, township 49, range 33, in Jackson county, Mo., having a frontage of 1,162.55 feet on the south side of Thirty-Ninth street, between Indiana avenue and Jackson avenue, and a depth of 150 feet therefrom.

On or about March 7, 1919, the board of public works of the respondent Kansas City adopted a certain resolution, No. 8486, stating that said Thirty-Ninth street, between said Indiana and Jackson avenues, was used and occupied for business purposes, and unanimously recommended that the same be improved as a business street, and be paved as a business street to the full width thereof, exclusive of sidewalks, with a pavement consisting of a wearing surface of asphaltic concrete not less than 2 inches in thickness, laid upon a Portland cement concrete foundation 6 inches in thickness, except that the center 18 feet of the roadway should consist of a Portland cement concrete pavement 6 inches in thickness, and that the whole of the contract cost of said pavement should be paid in special tax bills, to be issued and charged against the lands abutting on the said part of said street according to the frontage thereof. The usual notice of such a proceeding required by the city charter, was published for 10 days, and in that notice a time and place were fixed for hearing property owners relative to the proposed paving. This hearing was held, and no property owners appeared to oppose the same, nor to make suggestions relative thereto, with the possible exception of complainant herein. The secretary of the board testified that Mr. Brougham appeared and made some suggestion with respect to the laying of gas or water mains, but made no objection to the paving as a whole. This is denied by the complainant, who says he did not hear of the proposed improvement until it was in process of construction.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On April 11, 1919, a contract was awarded to the Gray Paving & Material Company, as contractor, providing for the paving specified at a contract price of $3.64 per square yard for the asphaltic cement concrete pavement, and $2.85 per square yard for the Portland cement concrete pavement; and subsequently, as provided by law, the common council passed Ordinance No. 35491, authorizing the improvement, and ratifying and confirming the contract therefor, and finding and declaring by a vote of more than two-thirds of the members-elect of each house, to wit, by 30 out of 32 members of both houses, that the street, or part thereof in which proposed improvement was to be made, was used or occupied for business purposes, and that the improvement had been unanimously recommended by the board of public works.

The pavement was laid and the work accepted by the city as having been completed according to the terms of the contract, and on or about July 31, 1919, the respondent city issued, in favor of the said contractor, its tax bill No. 26 of that date, assessing and charging against complainant's said land, as its pro rata share of the cost of said work, the sum of $8,374.92, which said tax bill was duly recorded and evidences a first and paramount lien on said property, and was thereafter sold and assigned in due course to the respondent Commerce Trust Company, which now owns and holds the same.

Complainant asks that this tax bill be declared illegal, null, and void; that the same be surrendered up and canceled, and the lien thereof be satisfied in full, and the cloud on his title be thereby removed, upon the grounds:

(1) That the said part of Thirty-Ninth street was not, at the times referred to, in fact used or occupied for business purposes, and that the declaration to that effect of the board of public works and common council was fraudulent in law and contrary to the rights of the plaintiff.

(2) As corollary to this, that under the procedure provided in such specific cases no right of remonstrance was accorded to residence property owners by which a majority might have stayed and deferred the contemplated proceeding.

(3) Because the said resolution, ordinance, contract, and the said tax bill founded thereon, whereby the said roadway was paved at a contract cost of approximately $7.20 per front foot, are unreasonable, confiscatory, illegal, and void, and constitute an unlawful taking of complainant's said property without due process of law, and deprive him of the equal protection of the law, contrary to the Fourteenth Amendment to the Constitution of the United States.

This proceeding was instituted under the provisions of section 3a of article 8 of the City Charter of 1908, as amended July 19, 1910. This section, omitting immaterial parts, provides as follows:

"In case the proposed improvement consists of paving * * * the roadway of a street * * * or part thereof, as specified in section 3, article VIII, of this charter and it is proposed to improve said street * * * or part thereof, *as a business street,* * * * the procedure therefor shall be as follows: The resolution of the board of public works providing for said work, in addition to the matters required to be stated therein by section 3, article VIII, of this charter, may contain a statement that the street

\* \* \* or part thereof in which the proposed improvement is to be made is used or occupied for business purposes, and that the improvement is unanimously recommended by the board of public works, then in such case the improvement may proceed regardless of any remonstrance: Provided, each house of the common council shall in the ordinance authorizing the improvement and ratifying, approving and confirming the contract therefor, find and declare by a vote of two-thirds of the members-elect of each house that the street, avenue, alley, public highway, or part thereof in which the proposed improvement is to be made is used or occupied for business purposes and that the improvement has been unanimously recommended by the board of public works, and such finding and declaration shall be final and conclusive for all purposes and no special tax bills that may be issued to pay for the work shall be held invalid or affected for the reason that the work for which they may have been issued was not unanimously recommended by the board of public works or that such street, avenue, alley, public highway, or part thereof was not, in fact, used or occupied for business purposes. Except as provided in this section the proceedings for paving the class of streets herein specified shall be the same as provided in article VIII of this charter for paving streets not found and declared to be used for business purposes."

Section 3 in the charter of 1908 makes this further provision:

"After the adoption of any such resolution the board of public works shall, by order, fix a day upon which a hearing in respect to such improvement shall be had, \* \* \* and shall cause to be published for ten days in the newspaper \* \* \* a notice directed to the property owners interested in the improvement without naming them, which notice shall recite the substance of the resolution and that a hearing will be had by the said board at their office concerning the proposed improvement, and the date upon which the hearing shall be had. On the date fixed for such hearing any and all property owners interested in such improvement may, by written petition, or otherwise, present their views in respect to the proposed improvement to the said board, and the said board may adjourn the hearing from time to time. After such hearing, if the said board shall determine that it is not for the public interest that the proposed improvement, or a part thereof, be made and paid for, either out of the general fund or by any method of assessment, they shall make an order to that effect, and thereupon the proceeding for the improvement, or part thereof determined against by such order, shall stop and shall not be begun again until the adoption of a new resolution."

Also said section 3 provides that if the street to be improved shall not have been found and declared to be used and occupied for business purposes and the resident property owners of the city owning a majority of the front feet of all the lands belonging to such residents fronting on the street, or part thereof, to be paved, shall file with the board on or before the day fixed for such hearing a remonstrance against such paving, the power of the board to make the improvement shall cease for a period of 6 months from the date of the remonstrance, after the lapse of which period the proceeding may be begun by the adoption of a new resolution. But, again, a new proceeding could be defeated by timely remonstrance.

[1] It will thus be seen that in cases of residence streets the right of remonstrance exists on the part of resident owners which may have the effect of suspending the power to make the improvement for a period of 6 months. In the case of a street found and declared to be used and occupied for business purposes, no such right of remonstrance is given, and of this complaint is made. If this were the gist of the

controversy, it could be said at the threshold of this discussion that complainant has no standing to invoke this provision of the charter. He does not come within the class whose rights are alleged to be invaded, no member of which is here complaining. Supervisors v. Stanley, 105 U. S. 305, 26 L. Ed. 1044; Clark v. Kansas City, 176 U. S. 114, 20 Sup. Ct. 284, 44 L. Ed. 392; Chadwick v. Kelly, 187 U. S. 540, 23 Sup. Ct. 175, 47 L. Ed. 293. In the latter case it is said:

"The serious duty of condemning state legislation as unconstitutional and void cannot be thrown upon this court, except at the suit of parties directly and certainly affected thereby."

It cannot aid complainant's case that resident owners testify that they would have remonstrated if given an opportunity so to do. Practically all of them say they did not know of the proposed improvement in time for such remonstrance, even though one had been allowed; but it is conceded that the publication giving the notice required by charter, and provided by law, was duly made. The hearing provided by law was fixed and held. No one interested appeared to protest or object in any fashion, however informal or nugatory. Most of the parties heard and knew of the improvement while it was in process. No objection was made nor action taken to stay the work prior to its completion and the issuance of the tax bill thereon.

[2] The complainant is and was a nonresident, and was given the right of remonstrance under no form of proceeding for an improvement of this nature. It has been held in numerous cases that this is no invasion of his rights under the Constitution of the United States.

"The Legislature, in the exercise of its paramount control of the state, could have authorized the council to have ordered the grading of streets at the expense of property owners without any petition." (And equally without provision for remonstrance.) Buchan v. Broadwell, 88 Mo. 31; Bank v. Clark, 252 Mo. 20, 30, 31, 158 S. W. 597; Field v. Barber Asphalt Paving Co. (D. C.) 117 Fed. 925; Id., 194 U. S. 618–621, 24 Sup. Ct. 784, 48 L. Ed. 1142.

In the latter case, Buchan v. Broadwell, supra, is quoted approvingly.

But I think the substantial question involved under specifications 1 and 2, as above stated, is whether the part of the street in question was, in effect, used for business purposes, and whether the board of public works and common council, under the charter provisions quoted, had the right so to declare with binding effect upon the property owners, resident and nonresident alike. Section 3a above set out is an amendment to an original provision of the charter of 1908 (article VIII, Charter and Ordinances of Kansas City, 1909, p. 312), which reads as follows:

"In case the proposed improvement consists of paving or repaving, macadamizing or remacadamizing as aforesaid, then, in that event, upon the unanimous recommendation of the board of public works, if each house of the common council shall, by ordinance, find and declare by a vote of two-thirds of the members-elect of each house that the street, * * * or part thereof, on which the proposed improvement is to be made is used or occupied for business purposes," etc.

It will be noted that in the amendment (section 3a) a significant change is made, to wit:

"In case the proposed improvement consists of paving * * * the roadway of a street, * * * or part thereof, * * * *and it is proposed to improve said street, * * * or part thereof, as a business street,* * * the procedure therefor shall be as follows," etc.

[3] We cannot avoid the necessary implication that the introduction of this changed language in the amendment was intended to recognize a plenary power in board and council to improve and pave certain streets *as* business streets independently of their strict actual present status as such. I am not at all sure that this power was not conferred by the original charter; but certainly the change which makes this purpose quite obvious and express cannot be ignored in construction.

The reason for this becomes apparent upon reflection. To those having knowledge of the development and improvement of cities it is well known that in certain sections, and at appropriate intervals, certain streets fall naturally and logically into the category of business arteries involving the character of feeders and common lines of communication serving considerable adjacent areas. Business follows in greater or less degree along such streets and avenues until they are stamped with the essential character of business streets, as distinguished from those more strictly or exclusively residential. It is natural and appropriate, if not essential and imperative that the board of public works and common council should recognize this situation and adapt the proposed improvement thereto, even though the specific portion of the street involved should not evidence in large degree at that moment, the special feature which characterizes the street as a whole. In no other way can a city expand and develop normally and to the best advantage of the general public, unless some power of discrimination, and the right to exercise such judgment and discretion, be lodged in the governing body of the corporation.

Upon this phase of the controversy, then, it is necessary to inquire whether the board and council acted in the legitimate exercise of such discretion? The general rule laid down by 3 Dillon on Municipal Corporations (5th Ed.) § 1151, is thus stated:

"That the power to lay out, open, grade, and improve streets, like other legislative powers, is a continuing one, unless the contrary be indicated, has been frequently decided in both the federal and state courts. It may therefore be exercised from time to time, as the wants of the public may require. Of the necessity or expediency of its exercise, the governing body of the corporation, and not the courts, is the judge."

The power of courts, as announced in this state, conforms to that recognized practically without exception throughout the states of the Union and in all federal jurisdictions.

"The general rule in this state is that with the exercise of such power the courts will not interfere. But when it appears that an ordinance passed in pursuance of such power is the creature of fraud, or is the product of legislative whim or caprice merely, and in violation of common right, imposing a burden upon the citizen without any corresponding benefit to him, or the community of which he is a constituent, the courts will interfere for his protection. In other words, while the courts may not interfere with the legiti-

mate use of legislative power delegated to a municipal corporation, they may interfere to prevent its abuse." Skinker v. Heman, 148 Mo. 349, 355, 356, 49 S. W. 1026, 1027.

The Supreme Court of the United States, in Field v. Barber Asphalt Co., 194 U. S. 618, 625, 24 Sup. Ct. 784, 787 (48 L. Ed. 1142), states the point thus:

"There may be cases of fraud or arbitrary abuse of power, when the courts will intervene. Under other circumstances, the municipality and property owners interested are bound by the acts of their agents."

—and specifically cites the case of Skinker v. Heman, supra. The latter case refers to a long list of Missouri decisions as illustrative of the principle announced. I have taken pains to examine them with care; from them may be gathered the various rules of law and equity applicable to the questions here involved:

"It [the charter] gives a power to legislate on the subject, and to pass more than one by-law and ordinance respecting it. This, like all power, is susceptible of abuse, but it is trusted to the inhabitants themselves, who elect the corporate body, and who may therefore be expected to consult the interests of the town." Hoffman v. City of St. Louis, 15 Mo. 651, 656.

"In assuming, however, the right to judge of the reasonableness of an exercise of corporate power, courts will not look closely into mere matters of judgment, where there may be a reasonable difference of opinion. It is not to be expected that every power will always be exercised with the highest discretion, and, when it is plainly granted, a clear case should be made to authorize an interference upon the ground of unreasonableness." City of St. Louis v. Weber, 44 Mo. 547, 550.

"In a suit on a special tax bill for the building of a sidewalk, evidence is admissible to show that the ordinance authorizing its construction was unnecessary and oppressive: it being located in an uninhabited portion of the city and disconnected with any other street or sidewalk." Corrigan v. Gage, 68 Mo. 541.

"The ordinances of these municipalities are subject to revision by the courts, and when not in conformity to the charter, or not reasonably incident to powers conceded in the charter, may be reviewed by the judiciary." City of Cape Girardeau v. Riley, 72 Mo. 220, 223.

"While irregularities arising in the enforcement of the rule [of assessments] in consequence of irregularities in the situation and depth of lots may afford a reason for an appeal to the legislative power of the state for their rectification, they would not justify the courts in invading the domain of the Legislature. * * * 'It is not in the power of the courts to enforce any fancied scheme of equality, seeming to them more just than the one adopted by the Legislature. The latter department of the government is wisely intrusted with the entire control of this subject, and if practical injustice is done, the remedy is with the people.' * * * The question is not whether individual instances of injustice may not occur. It is not whether the tax will produce perfect equality of burdens, nor whether the power * * * may not be abused. We know too well that under any system of taxation these things may and do happen. They are evils not within the power of the courts to remedy. It is for the Legislature to guard against them.'" Farrar v. City of St. Louis, 80 Mo. 379, 394, 395, citing Egyptian Levee Co. v. Hardin, 27 Mo. 495, 72 Am. Dec. 276; Garrett v. City of St. Louis, 25 Mo. 505, 69 Am. Dec. 475; City of St. Joseph v. O'Donoghue, 31 Mo. 345.

"The Legislature represents the public at large, and has paramount authority over all public highways, no matter how acquired. This authority may be, and is, to a large extent, delegated to the city of St. Louis over the streets therein. The power to regulate the use is not limited to a mere right of way, but it extends to all beneficial uses which the public good and convenience may, from time to time, require, as for laying gas, water, and sewer pipes, and

the like. New uses are constantly arising. All these, and many others, may be made of the streets without the consent of the lot owners. Private rights must yield to them. * * * It will not do to curtail the legislative powers in these respects." Ferrenbach v. Turner, 86 Mo. 416, 419, 56 Am. Rep. 437.

"This court, in recognition of a doctrine which prevails everywhere in the United States, will not declare an act of the General Assembly void, as in conflict with the Constitution, unless it is so manifest as to leave no doubt on the subject. In cases of doubt, every possible presumption, not directly and clearly inconsistent with the language and subject-matter, is to be made in favor of the constitutionality of the act." Kelly v. Meeks, 87 Mo. 396, 400.

"Where, as here, it must be conceded that the municipal corporation has the general power to pass the litigated ordinance, the mere passage of the ordinance makes out a prima facie case for the validity of the ordinance, so far as concerns any question of unreasonableness; the presumption is in favor of the exercise of the power by the city authorities, as being a reasonable and legitimate exercise of such power. When the courts are called upon to exercise the judicial power in declaring a municipal ordinance unreasonable, they will make such a declaration only when the prima facie case made by the passage of the ordinance is overcome in the most satisfactory manner." Morse v. City of Westport, 110 Mo. 502, 508, 509, 19 S. W. 831, 833.

"In the performance of duties in which discretion is lodged with the governing authorities of a city, we think objections to the methods adopted by them, which are within such discretion, should be made before the work is done, unless fraud or collusion is shown. It would be unjust to a contractor who has completed an improvement in full compliance with a contract awarded him by the board of aldermen, which is within the general powers conferred upon it, to refuse payment for the simple reason that the courts may conclude that the means or methods adopted by the board were not the best or cheapest. If contracts could be vacated for such reasons, all security to contractors would be destroyed and the cost of improvements necessarily increased in order to insure against such contingencies." Warren v. Barber Paving Co., 115 Mo. 580, 22 S. W. 491.

In the absence of fraud, arbitrary action, and action not influenced by honest judgment, resulting oppressively to the citizens, the following concessions are made to the majority opinion, upholding certain ordinances, by the dissenting opinion in Morse v. Westport, 136 Mo. 276, 286, 287, 37 S. W. 932, 934:

"The authority was, under its original charter, clearly conferred upon the council of the city of Westport to require the improvement of its streets, to determine which of them should be improved, the character of the improvement to be made, whether the adjacent property would be benefited thereby, and the amount of such benefits, and, for the purpose of paying the cost, to charge against such property the amount of such benefits. Its determination of these questions, in the exercise of an honest judgment and discretion, cannot be interfered with by the courts, though it appear from the evidence that the improvements were not, in fact, demanded by the public, and the benefits were not a fair equivalent for the charges exacted. It is true in some instances great injustice may be done to property owners, yet the remedy must be sought from the Legislature, by securing limitations on the powers of the council; the courts are given no power to interfere with the judgment or discretion of the legislative department of the state when exercised within its proper sphere. It is true that the whole theory of local assessments is that the improvement for which they are levied affords remuneration to the property owner in the way of benefits, and to go beyond the limit of compensation in making assessments would be to exceed the power of taxation; yet the honest legislative action of the council raises a conclusive presumption that the benefits received from the improvements will equal the charge imposed. The law presumes that the council has made careful investigation before it acted. To say that the courts have the right of review would substitute their

discretion for that of the Legislature, and would practically deprive the city of the legislative powers conferred upon it."

See, also, Barber Asphalt Paving Co. v. Muchenberger, 105 Mo. App. 47, 78 S. W. 280; Dennison v. City of Kansas, 95 Mo. 416, 8 S. W. 429.

In upholding the tax bills involved, the Supreme Court of the United States, in Field v. Barber Asphalt Co., 194 U. S. 618, 626, 24 Sup. Ct. 784, 787 (48 L. Ed. 1142), expressly refuses—

"to substitute the judgment of the court as to the expediency or necessity of making such improvement for that of the body delegated by law with the power and responsibility of action in the premises."

[4] Under the guidance of the principles announced, and of the law as established by uniform decisions of the courts, let us consider the improvement in controversy and the street upon which it was made. Obviously, the court, as a resident of Kansas City for many years, cannot, and should not, leave out of mind the knowledge of local conditions which it has in common with all other citizens.

[5] Running eastward from Main street, in the direction of the eastern city limits, a number of streets are found at convenient intervals, which, of necessity, and by common consent, have assumed the character of business arteries of the nature hereinabove described. Among them may be named Twelfth street, Fifteenth street, Eighteenth street, Twenty-Seventh street and Thirty-First street. Thirty-Ninth street, by common understanding, has been fixed upon as the thoroughfare next beyond Thirty-First street to the south, along which cross-town communication between the eastern and western parts of the city shall be established. A street car line from Main street to the east has long been projected and will ultimately be constructed. The street is substantially paved from curb to curb from Main street to Indiana avenue, which is the point of beginning of the paving now under consideration. All along its course it gives evidence of change from the residential character it originally had in common with all other streets at this distance (between 20 and 30 blocks) from the center of the downtown district. From Woodland avenue to Indiana avenue, a distance of 16 blocks, and certainly from Garfield avenue to Indiana avenue, a distance of 13 blocks, it conveys the impression of a business rather than of a residential street. It is true that many residences are found along this course, but considerable business centers are found at most corners, and business houses are scattered along through the intervening blocks, so that the trend and future of the street as a whole are clearly apparent. The residences are largely the constructions of some years past, and a location upon this street, within the limits designated, would be sought rarely, if at all, for residence purposes.

The paving here complained of begins at Indiana avenue, to which point the street has, for some time, been substantially paved. The new improvement but continues and extends the condition already existing up to that point for a distance of about one-half mile to Jackson avenue. No incongruity appears, but, on the contrary, the extension seems natural and appropriate. Business has already located itself at the

intersection of Thirty-Ninth street and Indiana avenue, and no one would contend that any one of these four corners will ever be used for other than business purposes. A street car line traverses Indiana avenue at this point. Between Indiana avenue and Jackson avenue there is now but one store, which is located near the eastern end of the proposed paving. There is a schoolhouse of considerable proportions about midway between Indiana avenue and Jackson avenue; but one residence appears in the intervening space. Residences appear, in comparatively new additions, to the south and north. It would seem but natural, and inevitable, that the general character of Thirty-Ninth street west of Indiana avenue should be extended to the east along the course of this paving. It may be that this improvement might have been deferred for a space without injury to the development of this particular territory; but the court cannot resolve such a question of policy, which is confided to the governing officers of a municipal corporation, with too great nicety. The street, as constructed, is undoubtedly a valuable convenience to the locality and to the public at large, and will invite more rapid development along its own borders, as elsewhere. Certainly, if the city were to improve at all, it could not, in my opinion, have done so logically on any other scale than that adopted.

It is urged that the abutting property owners should have been left to decide for themselves whether that part of the street, passing in front of their land, should be business or residential in its nature; but cities do not develop on that principle, nor is the special character of a street determined by the will of the individual property owner or owners. It is well known that citizens have selected their residences with great care and circumspection, only to find themselves, at no distant day, in the direct path of advancing commerce. In the instant case, we have a construction made by the city authorities in accordance with a situation already sufficiently apparent.

[6] It remains to consider whether the cost of the paving, and the tax bill issued therefor, is so grossly out of proportion to the resulting benefit and to the value of the property assessed as to make them unreasonable, confiscatory, illegal, and void, and to amount to an unlawful taking of complainant's property. Witnesses for complainant testify that none of the property in the benefit district is worth more than $10 per front foot, or $2,500 per acre, and that the tax merely approximates the same figure. Most of these witnesses were directly interested in the property and are affected by the tax, and due allowance must be made for that relationship. The same reasoning must be applied to the testimony of those favoring the improvement, who place the present value of the lots as high as $25 per front foot. Dr. Robinson paid $50 per front foot for his property, which is a corner lot lying near Indiana avenue. His assessment is very large, due to his misfortune in owning a corner lot, with its greater frontage upon Thirty-Ninth street. The same is true of the special instance of Mr. Winter, but such special circumstances cannot affect the proceeding as a whole. Farrar v. City of St. Louis, 80 Mo. 379, 394, 395; Louisville & Nashville R. R. Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 434, 25 Sup. Ct. 466, 467 (49 L. Ed. 819). In the latter case it is said:

"In determining whether an improvement does, or does not, benefit property within the assessment district, the land should be considered simply in its general relations and apart from its particular use at the time; and an assessment, otherwise legal, for grading, paving, and curbing an adjoining street, is not void under the Fourteenth Amendment because the lot is not benefited by the improvement owing to its present particular use. * * * A statute like the present manifestly might lead to the assessment of a particular lot for a sum larger than the value of the benefits to that lot. The whole cost of the improvement is distributed in proportion to area, and a particular area might receive no benefits at all, at least if its present and probable use be taken into account. If that possibility does not invalidate the act, it would be surprising if the corresponding fact should invalidate an assessment."

[7] Nor is the salability or nonsalability of property at any given time a true criterion. The real estate market has been notoriously dull for some time past, owing partly to the prohibitive cost of building. Conditions of this sort may convey superficially the false impression that property of substantial value is, in effect, of no value whatever. It would be idle to say that a substantial improvement of this nature, without which the real estate in question would be of little practical use or desirability, does not very materially add to its intrinsic value. Neither courts nor councils are held to exact computations. It is a matter of common knowledge that the exact, or even the approximate, benefits accruing from improvements of this nature, are not susceptible of precise ascertainment. On that account, systems of public improvement proceed upon standards largely conventional; the limitation being that the result shall be neither unreasonable nor confiscatory. In Egyptian Levee Co. v. Hardin, 27 Mo. 495, loc. cit. 499 (72 Am. Dec. 276) Judge Napton made this observation, which may well be adapted to the present situation:

"Equality of taxation may, however, be regarded as one of those Utopian visions, which neither philosopher nor legislator has ever yet realized. Approximation may be arrived at, and ought to, be, and to a reasonable extent attained; but such is the infinite variety and complexity which human transactions assume, that it surpasses the ingenuity of the political economist and practical politician to foresee exactly where and how the pressure of a proposed tax will fall."

"A system of delusive exactness should not be extracted from the very general language of the Fourteenth Amendment, in order to destroy methods of taxation which were well known when the amendment was adopted, and which no one then supposed would be disturbed." Louisville & Nashville R. R. Co. v. Barber Asphalt Pav. Co., 197 U. S. 430, 434, 25 Sup. Ct. 466, 467 (49 L. Ed. 819).

"The honest legislative action of the council raises a conclusive presumption that the benefits received from the improvements will equal the charge imposed. The law presumes that the council has made careful investigation before it acted. To say that the courts have the right of review would substitute their discretion for that of the Legislature, and would practically deprive the city of the legislative powers conferred upon it." Morse v. Westport, 136 Mo. 276, 286, 287, 37 S. W. 932, 934.

From the facts before me, and the law, as already stated, I am unable to find that the board of public works and council acted arbitrarily, unreasonably, and oppressively in ordering the paving of this street in the manner it did. We have not here a business improvement upon a street obviously and concededly residential in its nature, nor a section of pav-

ing located in an uninhabited portion of the city and disconnected with any other street or similar improvement, as was the case in Corrigan v. Gage, supra. We have a natural extension in kind of an improvement already existing and related.

- [8] Neither can I find from the record that the assessment is so excessive, imposing a burden upon the citizen without any corresponding benefit to him, or the community of which he is a constituent, as to amount to confiscation, and to render the action of the common council so unreasonable and oppressive as to justify the interference of this court. Proceedings in invitum are not to be upheld merely because parties in good faith have performed work or expended money in reliance upon their validity; but, on the other hand, such proceedings, apparently regular, are not lightly to be set aside because of varying opinions upon matters confided to official judgment and discretion. Otherwise public improvements must be wholly arrested, or prosecuted at prohibitive cost commensurate with the risk. In the case at bar, fraud on the part of the city government is undisclosed in pleadings or proof.

It follows that the finding must be for the defendants, and a decree may be entered accordingly.