THE STATE ex rel. MUSSER, Collector of the Revenue of the City of Plattsburg, v. JAMES H. BIRCH et al., Appellants.

Division One, February 15, 1905.

1. **TAXBILL: Assessment List: Evidence.** A certified taxbill in a suit by the collector for unpaid city taxes makes a prima facie case for him, which is not overthrown by a showing that the clerk can find no assessment list, or that the property-owner had refused to make a list when requested. The assessment list is not evidence in a suit for the collection of taxes.

2. **CITIES: Extension of Corporate Limits: Constitutional Statute.** That part of sec. 1580, R. S. 1889, in reference to extending the corporate limits of a city of the fourth class, which provides that "all agricultural or pastoral lands included within the corporate limits of such city shall be exempt from taxation for city purposes until they have, by recorded plats or sale, been reduced to tracts or lots of five acres or less," is unconstitutional. But that void part is not so interwoven with the rest of the statute as to render the rest invalid.

3. ———: ———: ———: Statute of 1895: Sufficiency of Words. Under sec. 5895, R. S. 1899 (Laws 1895, p. 65), an ordinance extending the corporate limits of a city of the fourth class need not be given the name of an extension ordinance, neither must it precisely define the territory taken in by metes and bounds as contradistinguished from the old territory. If the territory to be taken in constitutes one solid tract of land and is described according to section, township, and range, by metes and bounds, or otherwise, so as to indicate the boundary the city will have if the ordinance is approved by the people, it is sufficient.

4. ———: ———: Reasonableness: Judicial Province. The reasonableness of an ordinance, in suits to enforce rights claimed to arise thereunder, is a subject of judicial inquiry.

5. ———: Corporate Existence: Collateral Attack. The corporate existence of a municipal corporation, in the *de facto* exercise of corporate powers, must be challenged by the State itself by an information in the nature of a *quo warranto*, and can not be collaterally attacked; for instance, by a defendant in a suit for taxes.

6. ———: ———: ———: Extension: Reasonableness. An attack upon the corporate extension of a city as being unreasonable is not an attack upon the corporate existence of the city. Such attack may be made in a collateral proceeding, but when so made should be confined to the narrowest limits and keenly scrutinized.

7. ———: ———: ———: ———: Aided by Other Matters. If the pleaded specifications of the unreasonableness of an ordinance extending the corporate limits of a city over defendant's land are not sufficient in law to raise a legal defense they should be stricken out. For instance, if the answer does not charge that the land included was not "adjacent" to the former city limits, as the statute requires it to be, and that is the only ground on which the ordinance could be held to be unreasonable, it should be stricken out.

8. PRACTICE: Striking Out Answer: Rejecting Evidence. Where a portion of the answer is properly stricken out, evidence bearing on the subject should be rejected.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes*, Judge.

AFFIRMED.

*W. S. Herndon* for appellants.

(1) The court erred in sustaining plaintiff's

motion to strike out part of defendants' answer, and in refusing to admit evidence tending to prove that the ordinances extending the city limits were unreasonable and unjust.   The city of Plattsburg could only extend its corporate limits by an ordinance passed and submitted in the manner directed by the statute, and such ordinance must be a reasonable use of the power granted.   It should not impose a burden without a benefit, and its reasonableness is a fit subject for judicial inquiry.   St. Louis v. Webber, 44 Mo. 547; Corrigan v. Gage, 68 Mo. 541; Cape Girardeau v. Riley, 72 Mo. 220; Kelley v. Meeks, 87 Mo. 396; Morse v. Westport, 110 Mo. 508; Tarkio v. Cook, 120 Mo. 9; Bluedorn v. Railroad, 121 Mo. 272; Copeland v. St. Joseph, 126 Mo. 431; Verdin v. St. Louis, 131 Mo. 141; Morse v. Westport, 136 Mo. 288; Skinker v. Heman, 148 Mo. 356; Kansas City v. Stegmiller, 151 Mo. 189; Albright v. Fisher, 164 Mo. 68; State v. Beattie, 16 Mo. App. 131; Hannibal v. Tel. Co., 31 Mo. App. 32; State v. Harrington, 33 Mo. App. 476; Chillicothe v. Brown, 38 Mo. App. 615; Kansas City v. Cook, 38 Mo. App. 665; Plattsburg v. Riley, 42 Mo. App. 18; White v. Railroad, 44 Mo. App. 540; Lamar v. Weidman, 57 Mo. App. 512; Herman v. Handlon, 59 Mo. App. 492; Marionville v. Henson, 65 Mo. App. 403; Zumault v. Railroad, 71 Mo. App. 677.   (2)   The court erred in refusing declaration of law numbered 2, offered by defendants.   The ordinance extending the city limits, in 1887, was clearly void, for the reason that the statute, in force at that time, giving the city the power to extend its corporate limits, was in violation of sections 3 and 7 of article 10 of the Missouri Constitution.   Laws 1883, p. 37; Copeland v. St. Joseph, 126 Mo. 417; State ex rel. v. Wardell, 153 Mo. 319; Kansas City v. Cook, 69 Mo. 127.   (3)   The court erred in admitting in evidence, over the objections of defendants, ordinances numbered 60 and 142, of the city of Platts-

burg, and in refusing declarations of law numbered 1, 3, and 4, offered by the defendants. These ordinances do not purport to either "extend the limits of the city over territory adjacent thereto" or "to diminish the limits of the city by excluding territory therefrom," and do not describe any territory that is either to be taken in or excluded from the limits of the city. Under such a proposition as is contained in ordinance No. 60 the qualified voters of the city could vote themselves and their property outside the corporate limits as they originally existed and place the municipal corporation "over in the next township." The ordinance was not a compliance with the statute. Sec. 5895, R. S. 1899. (4) The court erred in refusing declaration of law numbered 1, offered by defendants, for the further reason that there was no assessment list, upon which to base the tax proceedings. The assessor's book did not take the place or supply the want of a list. Abbott v. Lindebower, 42 Mo. 162; State ex rel. v. Railroad, 114 Mo. 7; Blivins v. Smith, 104 Mo. 589.

*H. T. Herndon* for respondent.

(1) The action of the court in striking out a part of defendants' answer was justified by the ruling in the following cases: State ex rel. v. Land Co., 84 Mo. App. 32; Kansas City v. Stegmiller, 151 Mo. 209. (2) Appellants' assignment of error to the effect that defendant's lands were not legally taken into the city of Plattsburg in the year 1887 is fully discussed in the case of Birch v. City of Plattsburg, now pending in this court, but this question is not necessary to the determination of this case. (3) The record shows that the limits of the city were fixed and defined and certain territory annexed by an ordinance submitted to the voters in the year 1897, and that defendants' lands were included in such extension. This ordinance

purports to be an ordinance to change the territorial limits of the city, and is in conformity with section 2 of article 5 of the Laws of 1895.

LAMM, J.—Plattsburg is a city of the fourth class and sues to enforce the lien of taxes levied for 1899 on certain parcels of land in the southwest quarter of section 24, township 55, range 32, belonging to appellants.

No question is made over the petition. The answer was, (1) a general denial, (2) an allegation that this real estate is not and never was in the corporate limits, (3) that ordinances, notices, elections and returns thereof, whereby Plattsburg attempted to extend its limits to include the real estate in question, were insufficient, not in accordance with the laws of this State, nor the ordinances of the city relating thereto, and were illegal and void, and (4) that the statutes attempting to confer power on cities of the fourth class to extend their limits over any territory adjacent was unconstitutional and in violation of sections 3 and 7, article 10 of the State Constitution. Paragraph 5 of the answer was as follows:

"5th. That the attempt on the part of the said city to extend its limits so as to include the aforesaid real estate was an abuse and an unreasonable use of the power conferred on it by statute, to extend its corporate limits, in this, to-wit: That said property is not a proper subject for municipal action and its attempt to take it within the corporate limits of said city, would be a gross injustice to private rights, its only justification being a desire to subject it to municipal taxation; that said real estate is an outlying tract, used exclusively for pasturage and orchards, with no one living on it but plaintiff and his family; that it is separate and remote from the limits of the city, is not needed and there is no demand for the same for city purposes, and has no value as such and is not

Vol 186 mo—14

of a character to be used for such purposes, the greater part of it being rough and broken land; that the same is not connected with the said city in any way, and for the said city to subject the same to municipal taxation, would be purely an arbitrary action on its part, without justification, or right, and of no benefit to defendants, and to do so would damage the said real estate, by placing a burden upon the owner thereof, without any benefit.    And having fully answered, defendants ask to be discharged with their costs.''

Paragraph five was stricken out on respondent's motion. The cause being tried to the court as a jury, respondent introduced a duly certified taxbill and rested.

Appellants proved by the city clerk that he had searched for and could not find any assessment list handed in by appellants for the year 1898, and that there was no existing record of the passage of an ordinance on March 14, 1887, extending the city's limits. It was then admitted that said ordinance and the records pertaining thereto, and pertaining to the election ratifying the same, were destroyed by fire. Appellants proved that they gave in no assessment lists and had refused to do so, though the city's assessor had demanded the same, and further offered evidence tending to show that the land in question was outside the city limits prior to the extension of the same by said ordinance in 1887, at which time the city first attempted to take it in, and appellant James H. Birch testified that in his ''judgment as a lawyer and citizen'' said lands were not now in the city limits. Appellants offered to prove that the land was ''used exclusively for farm and pasturage purposes and that it was not needed by the city for municipal purposes and had no value as such. That it was an outlying tract of land and was not adapted for city purposes and that the only object in taxing it for city purposes was to col-.

lect revenue. That it was not connected with the city in any way, shape or form, and that it lies clear outside of the *portion of the city which is laid off in streets and alleys or lots and blocks,*" and hence the extension of the city limits was an unreasonable use and an abuse of the power vested in the city to extend its limits and cast a burden on appellants without a corresponding benefit. This offer was refused by the court. We have underscored a portion of the above offer to accentuate the fact that the offer was not to show the lands were not adjacent to the old limits of the city, but only to show they were outside the portion laid off in streets and alleys, lots and blocks.

Thereupon appellants rested.

Respondent thereupon offered the duly certified and verified assessor's book of the proper year showing the listing, valuation and description of the lands in question, to which appellants objected on the ground that the "assessment list is the best evidence." This objection was overruled. Thereupon respondent was permitted, over the objections of appellants, to introduce two ordinances of the city of Plattsburg, to-wit, ordinance 60 and ordinance 142.

Ordinance 60, omitting caption, reads:

"Section 1. That at the regular city election to be held on the sixth day of April, 1897, there be submitted to the qualified voters of the city, a proposition to change the corporate limits of said city and fix the same as follows: Beginning at the northeast corner of the northwest quarter of section 24, township 55, range 32, thence north one-fourth of a mile, thence west to the west side of the right-of-way of the Chicago, Rock Island & Pacific Railway, thence in a southerly direction, along the west side of said right-of-way to a point due north of the northwest corner of Prospect addition to the city of Plattsburg, thence south to the south line of section 23 in said township and range, thence east to the southeast corner of said

southwest quarter of said section 24, thence north to the place of beginning.

"Section 2. That notice of the submission of said proposition be given by publication of this ordinance two consecutive insertions in a weekly newspaper, published in said city.

"Section 3. That those voting at said election who are in favor of said proposed change shall have written or printed on their ballots the words, 'To change boundary line, Yes;' and those who are opposed to said change, shall have written or printed on their ballots the words, 'To change boundary line, No.'

"Section 4. This ordinance to take effect from its passage."

To the introduction of the foregoing ordinance, the appellants interposed the objection that it does not comply with the law, does not describe the land included in the extension, does not purport to be an extension, but purports simply to change the corporate limits and does not designate the land to be taken in or excluded from the limits, and because it is an unwarrantable use of the power to extend corporate limits.

It stands admitted in the case that ordinance No. 60 was duly passed, notice thereof published as therein provided, and that the proposition carried by a large majority at the election held on the sixth of April, 1897.

Ordinance 142 reads as follows:

"An ordinance in relation to the extension of the corporate limits of the city of Plattsburg.

"Whereas, by an ordinance entitled 'Special Ordinance No. 60,' passed and approved by the mayor and board of aldermen on the twelfth day of March, 1897, a proposition to change the corporate limits of the city of Plattsburg was submitted to the qualified voters of the city, to be voted upon at a regular election, to be held on the sixth day of April, 1897, and whereas said proposition, as submitted by said ordi-

nance, was on the sixth day of April, 1897, duly carried by and with the consent of the legal voters of said city voting at said election therefor, therefore:

"*Be it ordained by the board of aldermen of the city of Plattsburg, as follows*:

"Section 1. The corporate limits of the city of Plattsburg are declared to include the territory described as follows:" (Description the same as in special ordinance No. 60 above).

It is admitted that this ordinance was duly passed by the board of aldermen of said city, on the —— day of April, 1897, and took effect at the date of its passage.

Appellants interposed the objection to the introduction of ordinance 142, that it was irrelevant and incompetent, and because the city of Plattsburg had no power in reference to its corporate limits, except to either extend or diminish the same. Said objections to ordinances 60 and 142 were overruled. Respondent asked no instructions.

In instructions prayed, appellants asked the court to adopt their view of the law in (1) a peremptory instruction, in (2) an instruction which declared if the court found appellants' land was taken in in March, 1887, then the extension was void because the statute then in force granting such power was unconstitutional, in (3) an instruction which declared that if the court found appellants' land was taken in by ordinance 60, then the extension was void because the ordinance did not comply with the statute giving the city power to extend its limits, and in (4) an instruction which struck at ordinance 60 as an "unreasonable use of the power vested in the city to extend its corporate limits over territory lying adjacent thereto."

The trial court declined to follow the lead suggested by these instructions, but refused them and found for respondent. Appellants saved timely exceptions to the rulings striking out paragraph 5 of

their answer, excluding and admitting evidence, and refusing instructions, and, preserving them in a bill of exceptions, bring the cause here by appeal, after an unavailing motion for a new trial, and now challenge all said rulings as reversible error.

On record facts and issues thus outlined, can the judgment below be sustained? We think so, for the following reasons:

1. The certified taxbill made a prima facie case for respondent which needed no reinforcement, in the logical evolution of the trial, until overthrown by a successful assault. The fact that the city clerk found no assessment list did not overthrow it, nor did appellants'·refusal to make a list when requested have that effect. The power of an assessor to make an assessment cannot be atrophied or destroyed by the mere refusal of a recalcitrant taxpayer to pass under the yoke of the common burden of taxation.

Sections 5941, 9124, 9144, 9145, 9148, 9149, 9176 and 9179, Revised Statutes 1899, provide ways and means for assessing property where its owner refuses to list it, or is absent, or where, for any cause, return is not made, and, in the absence of countervailing proof, the presumption is the assessing officer did his duty as written in the law. [State ex rel. v. Hoyt, 123 Mo. l. c. 355; State ex rel. v. Fullerton, 143 Mo. l. c. 686; State ex rel. v. Seahorn, 139 Mo. 582.] The assessment lists are mere preliminary memoranda for the assessor's use, and not evidence in a suit for the collection of taxes. [State ex rel. v. Carr, 178 Mo. 229.] The tax books are the primary evidence. [State v. Hutchinson, 116 Mo. l. c. 402.] The. introduction of the assessor's book was superfluous, since the prima facie case made by the certified taxbill had not been overcome, but no error can be predicated upon its admission in evidence.

II. It is contended by appellants that if their

land was taken into the city by the extending ordinance of March 14, 1887, the extension was void because the enabling statute was unconstitutional. The statute thus assailed, so far as material to this case, reads as follows:

Section 1580, R. S. 1889. "The mayor and board of aldermen of such city, whether the same shall have been incorporated before becoming a city of the fourth class or not, with the consent of a majority of the legal voters of such city, voting at an election therefor, shall have power to extend the corporate limits thereof over any territory lying adjacent thereto, or may, by the same vote, reduce the territory of such city to exclude land used for farming purposes. *All agricultural or pastoral lands included within the corporate limits of such city shall be exempt from taxation for city purposes until they have, by recorded plats or sale, been reduced to tracts or lots of five acres or less.*"

The italicized portion of the section includes the poison and is claimed to be in contravention of sections 3 and 7 of article X of the State Constitution relating to uniformity of taxation and abolishing all exemptions except those enumerated in section 6 of said article. The precise question involved was before this court in Birch v. Plattsburg, 180 Mo. 413, wherein these appellants sued the city to recover taxes paid under protest. It was there held that the italicized part of the section was unconstitutional. But this court, applying the principle that under certain conditions, where the void part of a law does not furnish the legislative motive for the law's existence and is not so interwoven with the valid part as to make all its parts interdependent, it is not necessary to strike the whole law to the ground, clipped off the unconstitutional part of said section 1580, and left the parent stem intact as a valid grant of power to cities of the fourth class to extend their limits, and held that the taxes paid could not be recovered back.

The ruling in Birch v. Plattsburg, 180 Mo. supra, disposes of appellants' present contention relating to the unconstitutionality of section 1580, under which the extension of 1887 was made, and hence instruction numbered 2 was properly refused.

The ordinance of March 14, 1887, as well as all records pertaining thereto and pertaining to the ratifying election provided in said section 1580, having been destroyed by fire, no effort was made to supply the same by secondary evidence at the trial, and they are not before us, so that we might see by inspection that appellants' land was included in that extension. *Non constat* that we may not assume it was taken in by said extension; because appellants themselves brought the ordinance of March 14, 1887, before the court as an extending ordinance affecting their land, and tried their case below on that theory by introducing evidence *aliunde* tending to establish the fact and by praying instruction numbered 2, and now press the same theory in their brief. Appellants are, therefore, precluded from claiming any advantage from the fact that the terms of the ordinance in hand are not before us and we have the right to conclude that the extension of 1887 included the identical land taxed by the city and covered by this suit. And we so hold.

III. The view of the case last above seems to render the office of ordinances 60 and 142, subsequently passed, somewhat small; for if appellants' land was taken into the city, as we have just held, in 1887, it was but carrying coals to Newcastle to take it in over again in 1897 in the absence of proof that it had slipped out *ad interim*.

However, the Reports show extended litigation over the legal status of Plattsburg (Plattsburg v. Riley, 42 Mo. App. 18; Birch v. Plattsburg, 180 Mo. supra) and as the city suffered the misfortune of losing its records by fire, and as respondent seems to

rely on ordinances 60 and 142, and as appellants stren-
uously assault the same, we will consider them *ex
gratia.*

The statute in force when ordinances 60 and 142
were passed is section 5895, Revised Statutes 1899
(Laws 1895, p. 65). While in substance the same as
section 1580, Revised Statutes 1889, it omits the un-
constitutional part, and makes some changes of sig-
nificance. So far as material to the case, it reads as
follows: "The mayor and board of aldermen of such
city, whether the same shall have been incorporated
before becoming a city of the fourth class or not, with
the consent of a majority of the legal voters of such
city voting at an election therefor, shall have power to
extend the limits of the city over territory adjacent
thereto, and to diminish the limits of the city by ex-
cluding territory therefrom, and shall, in every case,
have power, with the consent of the legal voters as
aforesaid, to extend or diminish the city limits *in such
manner as in their judgment and discretion may re-
dound to the benefit of the city.*"

It will be seen that this statute does not require
the ordinance to be given the *name* of an extending or
diminishing ordinance, neither does it command that
the new territory to be taken in be precisely defined
by metes and bounds as contradistinguished from the
old territory. It does require the new territory to be
adjacent to the old, and an extending ordinance ought
to make it certain that the land in question is in the
limits of the city as enlarged. Now, under the calls
in ordinance 60, it appears that Plattsburg is a city
composed of government divisions of land which are
adjacent to each other and which, when inclosed by
the boundary call, constitute one solid tract of land.
It appears further with reasonable certainty that ap-
pellants' land, located in the southwest quarter of sec-
tion 24, township 55, range 32, is included in the city
limits. To have given ordinance 60 the name of an ex-

tending ordinance or to have emblazoned that fact in its provisions, would have added nothing to its legal effect. The law does not concern itself with mere names, but, refusing to stick in the bark, it searches for the kernel of the matter. To have described the old territory and then to have described the new, and to have followed that by the boundary of the city as enlarged, all with the precision of a skilled conveyancer, might have added somewhat of certainty, but the root of the matter to be got at was one of notice. Appellants were entitled to know their land was affected by the proposed change. The boundary line of the whole city, as it would be when enlarged as proposed, included their land and gave them such notice. What more notice to them or to the world would have resulted if the new territory had been separately described, or the ordinance given the name of an extending ordinance?

In the absence of a statute requiring cities of the fourth class to segregate the new territory from the old by description, it is our opinion that an ordinance which defines, as this one does, the boundaries of the city as they will be when enlarged, and which ordinance is followed by a ratification by a legal election, as this one was, is admissible in evidence to show that a given parcel of land lies within the city limits, and this holding necessarily carries ordinance 142—a mere corollary—with it. On this view, appellants' instruction numbered 3 was properly refused.

IV. The question of the reasonableness of the ordinances extending the limits of Plattsburg so as to take in appellants' land, came up in the story of the case below (1) on the motion to strike out paragraph 5 of the answer, (2) in excluding offered testimony, and (3) in refusing the fourth instruction, and seems the pivotal one. In considering it, only one phase needs attention, viz., the striking out of paragraph 5 of the answer. If the allegation of unreasonableness

was rightly stricken out, then the proof thereof was rightly rejected and the instruction thereon rightly refused; for it is hornbook law that *allegata* and *probata* must correspond and instructions be bottomed on testimony.

The general doctrine that the reasonableness of an ordinance is a subject of judicial inquiry, in suits to enforce rights claimed to arise thereunder, runs like a thread of gold through our case law. The doctrine is too firmly buttressed on reason and authority to be now mined by hostile criticism, let alone exploded. [St. Louis v. Weber, 44 Mo. 547; Cape Girardeau v. Riley, 72 Mo. 220; Kelly v. Meeks, 87 Mo. 396; Morse v. Westport, 110 Mo. 502; City of Tarkio v. Cook, 120 Mo. 1; Bluedorn v. Railroad, 121 Mo. 258; Copeland v. St. Joseph, 126 Mo. 417; Morse v. Westport, 136 Mo. 276; Skinker v. Heman, 148 Mo. 349; Albright v. Fisher, 164 Mo. l. c. 68.]

Running parallel with this doctrine is another equally well established, viz., the corporate existence of a municipal or public corporation, in the *de facto* exercise of corporate life, must be challenged by the State itself by an information in the nature of a *quo warranto,* and collateral attacks thereon ought not to be tolerated. [Kayser v. Trustees of Bremen, 16 Mo. 88; Inhabitants of Fredericktown v. Fox, 84 Mo. l. c. 65, and cases cited; Flynn v. Neosho, 114 Mo. l. c. 573; Kansas City v. Stegmiller, 151 Mo. l. c. 209; School District v. Hodgin, 180 Mo. 70.]

Considering the foregoing propositions as postulates and reasoning therefrom, the question arises. whether an ordinance of a city of the fourth class proposing to extend its limits, followed by an election legally held ratifying the proposition, and by an ordinance formulating the results, and followed by the *de facto* exercise of corporate power over the new territory, as here, ought not on principle to be considered in the nature of an act of incorporation and be pro-

tected from collateral attack? The question is a close one.

On the one hand is a line of cases where the reasonableness of such extending ordinances have been investigated and collaterally assailed, e. g., Plattsburg v. Riley, 42 Mo. App. 18; Kelly v. Meeks, 87 Mo. supra; Copeland v. St. Joseph, 126 Mo. supra; Kansas City v. Stegmiller, 151 Mo. supra. On the other hand, State ex rel. v. Mineral Land Co., 84 Mo. App. 32, denies the right of collateral attack, "where the act to that effect is free from defect or infirmity on its face or in its method of adoption, and is followed by a *de facto* exercise of corporate jurisdiction over the annexed territory." And in the Stegmiller case, supra, GANTT, J., said for this court (p. 209): "But in strictness we do not concede that this is a proper proceeding to test this corporate action. Until questioned by *quo warranto* or other direct proceedings by the State, it is intolerable that every time a city sues on an account it must first establish its right to exist." And in State ex inf. v. Fleming, 147 Mo. 1, while it is not held that *quo warranto* is the *only* remedy, it is held to be *a* remedy to test the right of a city to expand. While this court and no other appellate court in the State, so far as our investigation leads, has held that for defects appearing on the face of the ordinance and proceedings, or in cases of fraud or such unreasonableness as amounts to palpable and arbitrary oppression, relief may not be granted to a citizen without leave of any attorney-general or prosecuting attorney, when raised in a timely way by way of defense when sued, yet it is apparent the trend of the judicial mind is to confine such defenses to the narrowest limits and scrutinize them keenly. It would hardly seem, however, that an attack on the mere *expansion* of a city rises to the gravity of an attack on the corporate life or entity. A city or school district, shorn of its improper

expansion, would still exist in its original vigor, in its original size and for its normal functions.

It has been held that even in direct proceedings by *quo warranto* the mere including of land used for agricultural purposes would not sustain a writ of ouster. [State ex inf. v. Fleming, 158 Mo. 558.] And that the taking in of such lands is not unreasonable. [Copeland v. St. Joseph, 126 Mo. l. c. 433, and cases cited.] So, too, it has been said that the question of benefits is a legislative and not a judicial one (Prior v, Construction Co., 170 Mo. l. c. 451, and cases cited); that laches will destroy the right to complain (Stamper v. Roberts, 90 Mo. 683); and that the passage of the ordinance makes a prima facie case of reasonableness (Morse v. Westport, 110 Mo. 502).

The language of section 5895, Revised Statutes 1899, must not be lost sight of in this connection so far as ordinances 60 and 142 are concerned. It gives a broad and flexible grant of power to cities of the fourth class in these words: "The mayor and board of aldermen of such city shall have power . . . to extend or diminish the city limits in such manner as in their judgment and discretion may redound to the benefit of the city." Here is an extraordinary latitude of discretion not amenable to judicial review except in a capital case.

Now, if the whole answer be considered, it will be seen that the issue as to the land being in the city limits, though in paragraph 5, was raised in the second paragraph and fought out at the trial. It will be seen further that paragraph 5 does not allege the land affected was not "adjacent" to the former city limits. It uses language susceptible of that construction but taken with the offer of proof, evidently was intended to mean that appellants' land was not adjacent to that portion of the city "which is laid off in streets and alleys, lots and blocks." Since unreasonableness by itself is a mere conclusion, we have the right to look

to the pleaded specifications, and, looking to them, we are of opinion they were not sufficient in law to raise a legal defense, whether the act of expansion was accomplished by the ordinance of 1887, or the ordinance of 1897, and were properly stricken out; nor was it error for the court to refuse instructions numbered 1 and 4.

The judgment is affirmed.   All concur.