257 S.W.2d 236 (1953)
DRESSEL et al.
v.
CITY OF CRESTWOOD.
No. 28643.
St. Louis Court of Appeals. Missouri.
April 21, 1953.
*237 Edward C. Friedewald, St. Louis, for appellants.
Detjen & Detjen, Clayton, for respondent.
ANDERSON, Judge.
This is an action in equity brought by John H. Dressel, Margaret Wuellner, Paul C. Krueger, and Charles J. Wedemeier, as plaintiffs, against the City of Crestwood, as defendant, to have declared void an extension of the city limits of said defendant city, and to enjoin the latter from exercising any municipal authority over the territory annexed. The trial was before the court, and resulted in a finding and judgment in favor of defendant. From this judgment, plaintiffs have appealed.
The petition alleged that plaintiffs were residents and property owners in the territory sought to be annexed, and that the suit was brought as a class action for the benefit of plaintiffs and other property owners in said territory. It was then alleged that on March 7, 1951, defendant City passed an ordinance providing for the submission to the voters of the City of Crestwood the proposition to extend the corporate limits of the city; that on April 3, 1951, said extension of the city limits was duly approved by the voters of said city, and that thereafter, by ordinance approved and signed by the Mayor on April 10, 1951, *238 the result of said election was declared to have been in favor of said extension, and said city limits were extended accordingly. The territory annexed was described in the petition as included within the following boundaries: "Commencing at a point where the boundary line between Bonhomme and Gravois Township intersects the north line of Highway 66; thence eastwardly along the north line of Highway 66 to the western boundary of the City of Webster Groves; thence southwardly in a straight line across Highway 66 to the intersection of the south line of Highway 66 with the southwest line of Grant Road; thence southeastwardly along the southwest line of Grant Road to the northwest line of Pardee Road; thence southwestwardly, southwardly, and southwestwardly along the most northern and western line of Pardee Road to its intersection with the north line of Eddie and Park Road; thence west along the most northern line of Eddie and Park Road to the boundary line between Bonhomme and Gravois Townships; thence northwestwardly along the said boundary between Bonhomme and Gravois Townships to the place of beginning." It was then alleged that the territory annexed contained approximately 1,100 acres of land, and that the real estate owned by plaintiffs and others was thereby included within the limits of defendant City, and plaintiffs became residents thereof and subject to taxation by said City.
It was further alleged that the City of Crestwood had had no growth in population to necessitate an extension of its boundaries; that a great part of the annexed territory is used for dairying, farming and gardening purposes; that very little thereof is platted or being offered for sale as town lots, or divided into lots for city purposes, and that none of the land annexed is being held for the purpose of platting same as town property. The petition further alleged that except for the property facing on Highway 66 and Grant Road, and for a distance of about 1,500 feet on Sappington Road, which extends south from Highway 66, there is no water, gas facilities, or transportation facilities for the annexed area; that none of the real estate therein furnishes an abode for a densely settled community, or represents the actual growth of said city beyond its boundaries; that none of said real estate is needed by the city for any proper purpose; that it is not valuable by reason of adaptability for prospective town use, that it has no city advantages, and not necessary to foster the growth and prosperity of the City of Crestwood; that the value of the land in said annexed territory is based largely upon its value for dairying, farming and gardening purposes, or the erection of homes for people who desire to live in the country; that the population of said area is made up of people who moved there to avoid burdensome taxes, and to raise vegetable and farm products; that said area is in close proximity to the community of Sappington where there are schools, churches and stores which serve the needs of the residents of said annexed area, and the inhabitants of said annexed area have no community of interest with the City of Crestwood.
In said petition it is further alleged that the territory annexed is sparsely settled; that the value of the land therein has been diminished by said annexation; that the City of Crestwood has no public utilities, and that water, electric or gas facilities are being provided by private corporations, and that the residents of the annexed area would acquire no benefits in the supply or use of these facilities by being annexed to said city.
It was further alleged that within the City of Crestwood there is no manufacturing, no stores or commercial business, no parks or playgrounds, no sewer system or fire department, and no police department except a City Marshal; that the city has not experienced the growth and development of the usual city; that it has not progressed within the last ten years beyond its original 56.6 acres; that the inhabitants of the annexed area receive no benefits in insurance rates or any special value from the adaptability of the area for city uses, and that the City of Crestwood, being unable to support its city requirements before the annexation, is unable to furnish said annexed area any benefits.
*239 It was further alleged that the annexation was a fraud upon plaintiffs and others in that it was accomplished for the sole purpose of obtaining revenue by subjecting the property of the residents of said area to license fees and taxation without their deriving any benefits therefrom; and that the ordinance of extension was unconscionable, oppressive and unjust, a fraud upon property owners and against their interests, in that it extended the city limits to the inner side of Grant, Pardee, and Eddie and Park Roads, but assumed no obligation to maintain said roads, with the result that the property owners on said roads will be faced with the obligation of paying additional assessments for the repair and maintenance thereof, and St. Louis County will be compelled to help pay for said repair and maintenance, while the City of Crestwood will use the revenue obtained from the annexed area to repair and maintain roads and pay for other municipal obligations outside of the annexed area.
It was further alleged that the zoning laws of the City of Crestwood were inadequate and totally inapplicable to the territory annexed, and that the zoning problem in said area was adequately provided for by the zoning commission created under Article 6, Chapter 64, RSMo 1949, V.A.M.S.
The prayer of the petition was that the ordinance in question be held void, and that defendant be enjoined from putting said ordinance into effect, and from levying, assessing or collecting municipal taxes thereunder, or from exercising any municipal authority over said annexed territory or the residents thereof.
The answer of defendant admitted its incorporation as a village in 1947 with a population of 659 persons, admitted the passage of the ordinance, and that said city would exercise general municipal authority over the annexed area. There then followed a general denial of all other allegations of plaintiffs' petition.
The answer then alleged that the City of Crestwood was bordered on the east by Webster Groves, on the north by Oakland, and on the west by Kirkwood; that it was originally incorporated in 1947 as a village, at which time it had a population of 659 persons, and at that time it was bounded by Webster Groves on the east, Big Bend Road on the north, Highway 66 on the south, and on the west by an irregular line in the vicinity of Sappington Road; that the village at that time was mainly a residential area, with business and manufacturing establishments on Big Bend Road and on the north side of Highway 66; that in 1949 defendant changed its status to a fourth class city and extended its western limits to the boundary line between Gravois and Bonhomme Townships; that by June, 1950, the population of the city had increased to over 1,600 persons, and new businesses had come into the area, which increase in population and new business had extended south across Highway 66 into the area involved in this suit; that Highway 66 is one of the principal traffic arteries of the nation and practically all of that part of it which is in the city and area in question was zoned on both sides for light industrial and commercial purposes under the ordinances of St. Louis County and the City of Crestwood, with the result that on both sides of said highway in the present city limits there are stores, taverns, motels, trailer camps, filling stations, light industry and other business enterprises, including a Drive-In Theatre; that traffic on Highway 66 is tremendous and can only be regulated by a municipal police force; that a single political authority is necessary to police and supervise said area; that the former artificial boundary created an unsatisfactory division of a single community without the coordinated supervision now given to it by defendant; that south of Highway 66 is a community of homes, a few very small farms, and a large area of vacant land held for sale for residential purposes on which a number of homes have been built during the past two years; that the population of said area is steadily increasing; that in said area there has been inadequate police protection; that the city's zoning ordinance was being amended to facilitate further development; that said area was valuable by reason of its adaptability to town purposes; that it is sufficiently settled to constitute a *240 separate voting precinct; that applications for building permits have been made since the annexation; that it is essential that the privately owned sewage disposal plant, which is located within the annexed area and which serves the city, and which will serve portions of the newly annexed territory, be brought into the city for proper supervision; and that, in the judgment of the Board of Aldermen, it is necessary to extend the city's building code to the annexed area for the protection of the public.
It is further alleged that the defendant's tax rate is low as compared to neighboring cities; that defendant has a cash balance of over $10,000, no bonded indebtedness, no special tax has been levied; that all accounts are paid; that it has a police force; that it has installed many fire hydrants, street signs and markers, building, zoning and other municipal regulations; that it has a park, and has negotiations under way for the acquisition of a larger park with ground for municipal buildings and playgrounds; that defendant regulates the sale of intoxicating liquor, and that all these services are being extended to the territory in controversy.
It is further alleged that the assessed valuation of the original city north of Highway 66 is more than three times that of the annexed area and, for that reason, the cost of the services to be rendered by defendant city will be borne in that proportion by the inhabitants of the original city.
It is further alleged that the annexed area is in the path of the natural development of the city; that the annexation follows established political boundaries and precinct lines; that no line short of Grant Road, Pardee Road, and Eddie and Park Road would include the true extent of the entire community, but would be an arbitrary line which would lead to confusion and difficulty in the subdivision of property south of said Highway 66; that it is essential that the police control traffic on Highway 66; that local supervision of industry in the area is necessary for the protection of all inhabitants in the city; that the road tax refund from the county will enable defendant to open, extend and improve the roads in said area; and that with the natural development and growth of the city a fire department can be established, which would be impossible for either the original city or the annexed area to do, acting alone; that the Board of Aldermen found and determined the extension to be reasonable, lawful and necessary, which judgment was approved by the voters; that said annexation was made in good faith, and that the inhabitants of the annexed area will receive benefits in excess of the cost to them in taxes, through county road tax refunds, public utility taxes, and other presently unavailable revenues, including a portion of the taxes to be paid by the inhabitants of the original city; that the annexation creates a well rounded out city, with a population in excess of 2,500 persons, having two similar residential districts on either side of a commercial and light industrial zone along Highway 66, which serves both residential districts as well as much transient trade; that there is no sewer system in the area annexed, and many septic tanks therein are in bad condition or insufficient to serve the premises by which they are being used; that a number of housing units, such as motels, tourist camps, and trailer camps in the annexed area, combined with a lack of a sewerage system, has created an unsanitary and unhealthful condition accompanied by noxious odors, endangering the health of the inhabitants of said area and the entire city; that no adequate provision can be made for handling the sewerage problem at a reasonable cost other than under municipal government supervision; that there are many short dead-end streets in the annexed territory not maintained by the county which will have to be developed and extended, which can best be done under a municipal government; that many of the problems affecting traffic, sewerage, fire protection, and the extension of water and gas lines are common to both sides of Highway 66; that most of the annexed area is in the same watershed with the original City of Crestwood, so that it is necessary for a proper development of a sewerage system for the entire area that there be a single governmental authority over the whole territory; and that in the annexed territory the great number of *241 housing trailers, tourist camps, and motels result in a more or less transient population of more than 1,000 persons, making it essential for the well-being of the entire community that the increased sewage, sanitary and traffic hazards be regulated and policed by the City of Crestwood.
The record shows that the village of Crestwood was incorporated in November, 1947. The area which constituted the village at that time was bounded on the north by Big Bend Road, on the south by the north line of Highway 66, on the east by the City of Webster Groves, and on the west by a line approximately 150 feet east of Sappington Road. The village at that time had a population of 659, consisting of 455 adults and 204 minors. In 1949 the village voted to become a fourth class city and, in July, 1949, annexed territory to the west by extending the western boundary to the boundary line between Gravois and Bonhomme Townships.
In 1950, the population of the City of Crestwood, according to the Federal census, was 1,645. On March 7, 1951, the Board of Aldermen enacted an ordinance, which was approved by the Mayor, submitting to the voters of the defendant city the proposition to extend the corporate limits of the city to take in the area involved in this action. Under this proposed ordinance the southern limits of the city were established at the north line of Eddie and Park Road, the eastern limits of the annexed area were fixed at the western line of Grant and Pardee Roads, and the western limits at the Bonhomme Township line. The part proposed to be annexed was roughly similar in size and shape to the city itself. The annexation of this territory was submitted to the voters in an election held April 3, 1951, and was approved by a vote of 341 for annexation and 187 against said proposition. Thereafter, the Board of Aldermen enacted an ordinance declaring the annexation complete. The population of the annexed area was 871, making the total population of the city, after annexation, 2,516.
Sappington Road runs north and south through the city from Big Bend Road on the north to Eddie and Park Road on the south. Sappington Road runs approximately halfway between the eastern and western boundaries. Highway 66 runs east and west through the city, approximately halfway between the northern and southern boundaries of the city. Sappington Road and Highway 66 thus divide the city into approximately four equal areas. The north half of the northeast area is thickly populated. Several subdivisions have been developed in that area since 1947. The south portion of the area consists of ground which is more or less vacant, although a new subdivision was being developed there at the time of the trial. Said area is adjacent to Webster Groves to the east, and the City of Oakland on the north. In neither of said cities is there any great area of undeveloped land. In the northwest corner of the area, west of Sappington Road and north of Highway 66, there are also a considerable number of residences. This area is adjacent to the City of Kirkwood. The balance of this area consists mainly of vacant land suitable for urban development.
As heretofore stated, the annexed area is bounded on the east by Grand and Pardee Roads. There are a great many homes built facing these roads. There are also quite a few residences on Sappington Road, and some on Eddie and Park Road which forms the southern border of the annexed area. However, the rest of the area between Sappington Road and the eastern limits of the city consists mainly of vacant and undeveloped land. There are also in this area a few small truck farms. The same condition prevails in the area between Sappington Road and the western city limits. The area is interspersed with residences, but there are large tracts of vacant land and a few truck farms. In addition, there is a dairy farm in this area consisting of about 30 acres, and a 30-acre tract belonging to John Dressel on which are 1,000 or 1,500 fruit trees.
In the northeast corner of the annexed area, near Highway 66 and Grant Road, is an industrial and business district. Located there is the Butane Gas Company, with offices and a warehouse on the south side of Highway 66, and storage tanks on the north side of said highway. There are *242 also in this area various business places known as The Hampton Supply Company (a lumber business), the Majestic Ready Mix Company which sells concrete, the Webster-Crestwood Company (also referred to in the evidence as Russell & Company) which operates a sewage disposal plant, and the Killebrew Engineering Company.
Along the south side of Highway 66, in the annexed area, are residence properties and a number of business enterprises. The businesses are: Highway Auto Court, Royal Motel, Rose Garden Tea Room, large Drive-In Theatre, Herman's Green House, Schulz Trailer Park, Lone Star Auto Park, Walnut Park Auto Sales, Slamp's Tavern, Conroy's Tourist Rooms, Vogelsang's Tavern, Blue Haven Motel, Peeton's Auto Shop and Filling Station, Pelot's Liquor Store, the Antique Auto Museum, Cedar House (an eating place), and 66 Trailer Park. A portion of the Blue Bonnet Tourist Court is also within the annexed area. There is also a small trailer camp near the Highway Auto Court in the eastern part of the city, the name of which is not disclosed by the evidence.
On the north side of Highway 66, within the city limits, are the following places of business: Colonial Hotel, Wuellner's Service Station, Trueman's Food Shop, Van Cleave Nursery, Kennedy's Restaurant, Busby's Ice Cream establishment, a barbecue place known as the "Pig on the Pit", a package liquor store, Oak's Motel, Goetz Nursery, Sam Kiel's Filling Station, a trailer camp called "Crest Acres", and Bowman's Trailer Camp.
On Big Bend Road, near the city limits, there is a store, a filling station, a manufacturing concern which makes fluid for cigarette lighters, and a cabinet shop.
The evidence shows that for the period from February, 1949, to April 3, 1951, there were nineteen building permits issued for the erection of private residences in the annexed territory, a permit to build the Royal Motel consisting of 48 units, a permit to the Majestic Ready Mix Company for a plant adjacent to the Missouri Pacific tracks, a permit for an office and repair shop for Grantwood Construction Company, and a permit for a service station for the Majestic Ready Mix plant.
The records of the county clerk's office show that in the portion of the City of Crestwood north of Highway 66 the assessed values for 1950 were as follows: real estate $1,164,310; personal property $258,190; and railroad and telegraph property $96,934; making a total assessed valuation of $1,519,434. In the annexed area the assessed value for 1950 was, real estate $414,890. The assessed values for the entire city, including the annexed area, were: real estate $1,821,570; personal property $560,150; and railroad and telegraph property $98,065; making a total assessed valuation of $2,479,785. The tax rate is 55 cents on the $100 valuation, which is considerably lower than the tax rate in other nearby municipalities.
There are no sewers in the annexed area, and sewage from all the business establishments located on Highway 66, and from all homes south of said highway, is disposed of through septic tanks. Odors emanate from these septic tanks, and the odors are particularly bad behind the Lone Star Tourist Court, which is located on Highway 66.
Russell & Company's sewage disposal plant is located in the northeast corner of the annexed area. At the present time the only part of the City of Crestwood which is serviced by this company is a part of the northeast section of the city north of Highway 66.
Mr. M. S. Vandeventer, President of Russell & Company, testified for the defendant. He stated that two-thirds of the annexed area, including the business establishments on Highway 66, could be serviced by a sewer system connected with his company's disposal plant. The area which his company could not service, according to Mr. Vandeventer's testimony, would be a small section in the southeast corner of the annexed territory. He stated that the drainage from this smaller area would take its natural course and would have to be carried into Gravois Creek, which is in that vicinity. To service the *243 area in question would be a private undertaking of Russell & Company, and the cost of installing a trunk line for that purpose, according to Mr. Vandeventer's testimony, would be the sum of $50,000, which would not include the lateral system. The cost of this system would ultimately be paid by the inhabitants. Trunk lines would have to be laid along Highway 66, one south of the highway to serve the annexed territory, and one north to serve the original city.
Mr. Vandeventer further testified that it would not be practicable at the present time for his company to service the area from Highway 66 south to Eddie and Park Road; that at the rate the territory had been building up the last two years, it would probably be 20 or 25 years before it would be practicable to service that area with a sewer system such as he proposed. However, the witness further testified that trunk lines along Highway 66 could service the original city and the annexed area, and that:
"It is my belief that should we be able to construct a sewer line up there, that it would develop rapidly, because the area is potential, and it lays nicely, and I would say in ten years that area would be two-thirds populated. * * I think that it is a proven fact throughout the country any place where there are sewers and water or other necessary utilities, that the area automatically develops and it enhances the value of the property. * * * I feel it is true in that area.
* * * * * *
"Q. And if the City of Crestwood should propose to construct a sewer along the south side of Highway 66 to service the businesses and homes in that community, would your plant be available to the city for the disposal of that sewage? * * * A. Yes, that is the reason we put the plant where we did, to catch that drainage area.
* * * * * *
"Q. Then you have testified that in such event the construction of homes on a smaller lot would proceed much more rapidly in that area? A. I think it would."
The St. Louis County Water Company supplies water to the northeast corner of Crestwood east of Sappington Road, and an area of two blocks south of Big Bend Road from Sappington Road west to the Bonhomme Township line. There is also a water main on Highway 66. The rest of the area north of Highway 66 is not serviced. There is a water line south on Sappington Road from Highway 66 for about 1,100 feet, and a line from Lindbergh Boulevard on the west along East Watson Road that extends partly into the city. The company also furnishes water to Russell & Company and the Majestic Concrete Company, and along Pardee Lane in the eastern part of the annexed territory.
Water supplied by the St. Louis County Water Company is paid for by the resident users and not by the City of Crestwood. There is no physical reason which would prevent the water company from extending its lines through the annexed area. According to the testimony, such extension would merely be a matter of the city entering into a contract for that purpose, or a subdivision bringing the water into any portion where desired.
Highway 66 is a much traveled thoroughfare. A check of traffic along this highway was made in March, 1951, by Howard Eberhart, maintenance engineer for the State Highway Department. This check was made at Grant Road and Highway 66, within the City of Crestwood, between 9:15 and 11:15 a. m. This check showed a total of 299 westbound vehicles and 292 eastbound. Eighty-five per cent of the westbound cars traveled under 50 miles per hour, and 50 per cent traveled under 43 miles per hour. The average speed of westbound traffic was 50 miles per hour, the highest speed being 65 miles per hour, and the lowest speed 27 miles per hour. Eightyfive per cent of the eastbound traffic traveled under 50 miles per hour, and 50 per cent traveled under 41 miles per hour. The average speed of eastbound traffic was 42 miles per hour, the highest speed 62 miles per hour, and the lowest speed 26 miles per hour. There is very little *244 pedestrian travel on Highway 66. Based upon this check, the Highway Commission recommended to the City of Crestwood that it establish a speed limit of 50 miles per hour. This recommendation was accepted by the city and signs were placed on the highway showing the speed limit established by city ordinance. The whole area is now being policed by city officers.
The Drive-In Theatre located on the south side of Highway 66, within the City of Crestwood, operates seven nights a week from April to November. Three shows are given on Saturdays, and two on Fridays and Sundays. Lester Kropp, a representative of the theatre circuit which operates the theatre in question, testified:
"We can handle seven hundred and ninety-eight cars, with speaker rib; sometimes we get more than that, but we put them in back where there are no speakers.
"Q. How many cars on an average? A. I would say four or five hundred cars a night."
Prior to the annexation the theatre company hired a man to supervise the traffic going in and out of the theatre and to occasionally patrol the theatre area. The witness further testified that, since the annexation, the company continues to pay this man, who is a member of the city police force, for this service.
The Police Department of the City of Crestwood consists of a Chief of Police and three deputies. One of these officers, Melvin Cotton, is also a deputy sheriff. His duties consist of patrolling Highway 66 from the city limits of St. Louis, through the City of Crestwood, to Lindbergh Boulevard, which is a short distance west of Crestwood. He is also a police officer of the Village of Marlboro. He is furnished by the City of Crestwood with an automobile equipped with a two-way radio with which he may communicate with the sheriff's office or with any other police automobile in the county which is similarly equipped.
Prior to the establishment of the speed limit there were a great many accidents on Highway 66. Officer Cotton testified:
"Highway 66 to the City of Crestwood has always been known as a danger spot on the highway, and also more accidents in that stretch than on some of the other roads like Lemay and Gravois, or some of the other roads down there in the south end. * * * since the city has put up the speed signs, it has been patrolled by the city, and I haven't had occasion to work on an accident on 66."
East Watson Road runs through the northwest corner of the annexed area, beginning a little west of Sappington Road. East Watson Road was maintained by the county prior to the annexation. Sappington Road runs north and south through about the center of the annexed area from Highway 66 to Eddie and Park Road. Sappington Road was also maintained by the county prior to the annexation. East Watson Road and Sappington Road are the only roads in said area built to specifications for county maintenance. Eddie and Park Road, Pardee Road, and Grant Road must still be maintained by the county for the reason that the city limits reach the inner side only of these roads.
Raymond E. Julius, Assistant Highway Engineer for St. Louis County, testified that the County Highway Department had the necessary equipment to care for the maintenance of all county roads, and that, since the extension, the county no longer maintained the roads in that area. The only roads maintained by the county in that area were East Watson Road and Sappington Road. There are other roads in the area, such as Garber Road which runs east and west from Pardee Road to Sappington Road, and Pardee Lane, which runs north and south from Pardee Road to Highway 66 in the northeast section of the annexed area. There are other roads established by persons who have built homes in said area.
The City of Crestwood has no fire department. Fire protection is furnished by the Mehlville Fire District, which is located approximately eight miles from the annexed area. North of Highway 66 the city government has installed 30 fire hydrants. No fire hydrants have been installed *245 south of Highway 66. The establishment of fire hydrants in that area is a matter for the future.
Mr. I. H. Hollabaugh, an alderman and member of the City Fire and Police Board, testified:
"The area south of 66 can be supplied, and at the present time there is an eight inch water line running parallel with Highway 66, and running north and south along Grant Road there is a twenty inch main line which can be divided and run through the area. * * * What we do there on that would be to send our map to the State Inspection Bureau and have them locate or provide the locations of the fire hydrants, and once they are approved then the water company will lay a line to these specific points for the protection to the community.
* * * * * *
"Q. And have you had any discussion with the Affton Fire Protection District about furnishing fire protection for the newly annexed area, as well as the northern part of the city? A. The Affton Fire Department has been very cooperative and has advised us that if we will take the proper steps they will establish within our limits, and I believe they must have a stationfire stationwithin two miles of an area to be served, and they will install the proper equipment if we furnish the building, and will have the fire plugs and water lines properly located."
Mr. I. E. Thompson, Mayor of the City of Crestwood, testified that one of the purposes in annexing the area in question was to secure an area of sufficient size to make a fire district.
Witness Lester McKean testified that he was in the real estate business and was familiar with the annexed area. He stated that:
"it is more or less adaptable in that vicinity there for farming and gardening purposes, due to the fact that there is no sewage available in there at all that I know of.
"Q. Where you have a scattered population and your area consists mainly of acreage and particularly where there are a number of them that are large tracts of land, say twenty or thirty or forty acres, is it practicable to put sewers in an area of that kind? A. I would say not."
The witness further testified that the development in the northeast corner of the city would have no bearing on the value of the property lying south of Highway 66.
For the defendant, there was testimony that in the annexed area there were approximately 200 residences in which approximately 300 families resided. There was also testimony that there were 104 families living in trailers in the trailer courts on the south side of Highway 66. One of defendant's witnesses estimated the land in cultivation in the annexed area at less than 75 acres.
The City of Crestwood has enacted a zoning ordinance, a plumbing code, and an electrical and building code. Mr. Baughman, Planning Director for the St. Louis County Planning Commission, testified that, in his opinion, the city zoning ordinance properly serves the needs of the community. He stated it was similar to the county zoning ordinance, but that there were some improvements in the city's ordinance over the county ordinance which would tend to encourage development and installation of improvements south of Highway 66. The witness detailed the nature of the better features of the city's zoning ordinance over the county ordinance. We believe it would unduly prolong this opinion to set out this evidence in detail. Suffice it to say, it had reference to the zoning of the lots permitted by the city ordinance in various areas of the annexed territory. The witness further testified that the city's zoning ordinance had provisions with respect to commercial districts, which provisions were more up-to-date than those contained in the county ordinance. He stated that he thought the city's zoning ordinance would serve the annexed area better than would the county ordinance.
For the six months' period ending June 30, 1950, the total receipts for the City of *246 Crestwood were $9,213.73, and disbursements amounted to $6,592.59, leaving a balance on hand of $2,621.14. For the six months' period ending December 31, 1950, the total receipts were $11,053.07, and disbursements $5,796.23, leaving a balance on hand of $5,256.84. For the six months' period ending June 30, 1951, the total receipts were $17,705.47, and disbursements $8,480.73, leaving a balance on hand of $9,224.74. The City of Crestwood has no bonded indebtedness. None of the above figures include any income from the annexed area.
The annexed area is in Consolidated School District R-8. Within this district is Grant School, which is near Grant Road and Highway 66 in the original city. This school is attended by children who live on both sides of Highway 66. Plaintiffs' evidence, however, was that a large majority of the children living in the annexed area go to the Sappington School located south of the annexed area.
Mr. Hollabaugh, when asked to detail the factors taken into consideration by the Board of Aldermen in passing the ordinance in question, replied:
"Well, it was mostly taken into consideration, not only for the immediate, but for the future development of the City of Crestwood. We considered, due to the very limited area on Big Bend, we considered Highway 66 as really the center, should be the center of the City of Crestwood, and as it was developing very fast from a commercial standpoint, it was only natural that should be the center of the commercial area for the City of Crestwood. We surveyed the area and drove the streets and roads, and took into consideration the topography of the entire area as to future developments for water and for sewers, and for other utility developments. Being a member of the Zoning Commission, I was particularly interested, as well as being on the Board of Aldermen, in what could be done and what should be done. We felt that if sewage was laid along Highway 66, not only the commercial area would benefit by it and develop from it, but also the residential area in the general neighborhood. As far as the Water Company is concerned, we had made contact through our water commissioner, with the County Water Company, and we were assured that the development could be handled in due time, and we would likewise use Russell & Company on sewage. They gave a possible estimate of in the neighborhood of $50,000 for laying sewage and trunk lines to carry away the sewage in that particular area, due to the large drainage to their plant at the foot of the hill, which has been previously described in this hearing. We took into consideration the roads, and those undeveloped, and the bridges, and we have since then done considerable work on both, and as I am familiar with some of the activities of the county as to developing and maintaining county roads, it is impossible for them to maintain a county road, or any road, unless it is laid out to certain specifications, and this area is not laid out to their specifications. We also took into consideration the possible expense of maintaining and developing the roadways through the area and what it would mean to the people living in the area. We took that into consideration as to development, and from a sewage standpoint, and furnishing water for the gardeners and others in that community."
The witness further stated that the Board of Aldermen also took into consideration the increased building of residences in the area south of Highway 66, and the development along the south side of said highway.
Mayor Thompson testified:
"We took into consideration the fact that our commercial area was building up rapidly along Highway 66, and that some businesses were going in on the south side of Highway 66, due to the development of the original incorporated area north of the City of Crestwood.

*247 The only thing we had in mind was that we wished to get another area into the City of Crestwood so that in the future we could establish our own fire department, and exercise governmental functions over sufficient territory, so we could furnish some of the things to the entire area. * * * It was the concensus of the opinion of the Board of Aldermen that the commercial area along Highway 66 should be regulated and controlled by the City of Crestwood, inasmuch as our boundary on the north side of Highway 66 and the area on the south side of Highway 66 were adjacent to each other, and we felt that the control of traffic on that highway should be maintained by the city to lessen the hazard created by the building of this commercial area. * * * the territory south of Highway 66, being a part of St. Louis County, had no particular building restrictions, and had no particular supervision by St. Louis County as to the type of structure, and those things were taken into consideration for the protection of the people in the area. * * * we have exercised the right of regulating certain types of construction south of Highway 66 as we have in the original area of Crestwood. * * * The assessed valuation of that area over there is approximately four hundred thousand dollars, as compared with the assessed valuation of the City of Crestwood itself in 1950 of $1,436,000, and in 1951 of $1,879,000."
The area which now comprises the enlarged city for many years constituted a single voting precinct in St. Louis County known as Gravois Precinct No. 5. The registered vote in this entire area at about the time the village was incorporated was 308, but, due to the increased population in the entire area, the registered vote by 1950 was 791. In that year the Election Board of St. Louis County divided the area into two precincts, making the portion north of Highway 66, which constituted the City of Crestwood, a separate precinct known as Gravois Precinct No. 5, with a registered vote of 573, and making the area south of Highway 66 a separate precinct known as Gravois Precinct No. 25, with a registered vote of 218. By 1951, the registered vote in Gravois Precinct No. 5 was 799, and south of the highway it was 220.
The original city north of Highway 66 is divided into two wards known as Wards 1 and 2, each with a population of over 800. The annexed area has been established as Ward No. 3. At an election called in Ward No. 3 in June, 1950, two members of the Board of Aldermen were elected and they are now serving as such board members.
Appellants contend that the trial court erred in not declaring the ordinance in question void for the reason that it conclusively appears from the evidence that said proposed extension of the city limits was unreasonable and unnecessary.
It is provided by Section 79.020 RSMo 1949, V.A.M.S., that the Mayor and Board of Aldermen of a city of the fourth class, with the consent of a majority of the legal voters of such city, have power to extend the limits of the city over territory adjacent thereto in such manner as in their judgment and discretion may redound to the benefit of the city.
Since the General Assembly has by the terms of the above mentioned statute given the Mayor and Board of Aldermen a discretion in the determination of the necessity and reasonableness of an annexation, the courts will interfere only to correct an abuse of that discretion. The rules which must govern this court in the determination of the questions presented on this appeal are stated by our Supreme Court in State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393, 398, as follows:
"It was not for the trial court to decide whether, upon the facts shown to exist, the extension of the boundaries was necessary, but to determine whether or not, upon the facts shown to exist, reasonable men would differ as to the necessity of the extension. If the question of whether or not the *248 territory involved should be included within the city limits was fairly debatable, that is, if there was substantial evidence each way so that reasonable men would differ about its necessity, then the decision of that question was for the city council and the city electorate and not for the court. When the evidence shows a fairly debatable question about the matter, then neither way the question might be decided would be unreasonable."
See also, City of St. Louis v. Weber, 44 Mo. 547; Copeland v. City of St. Joseph, 126 Mo. 417, 29 S.W. 281.
This being an equity case, we are not bound by the trial court's finding, but must try the case de novo and render such judgment as in our opinion is just and proper upon the whole record. However, in passing upon the case, we are bound by the same rules as the trial court. We cannot substitute our judgment for that of the city officials, but must confine our inquiry to the question whether, upon the facts disclosed, said officials could reasonably have found that the annexation was necessary, proper and reasonable; and, since it was within the statutory power of the Board of Aldermen to provide by ordinance for the extension of the city limits, the ordinance in question is presumed to be reasonable and valid until that presumption is overthrown by evidence which clearly shows the contrary. Hislop v. City of Joplin, 250 Mo. 588, 157 S.W. 625; State ex rel. Hart v. Whitaker, Mo. App., 218 S.W.2d 121; State ex inf. Taylor, Atty. Gen., ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762. Where the reasonableness of an ordinance is doubtful, the doubt must be resolved in favor of the ordinance. State ex rel. Musser v. Birch, 186 Mo. 205, 85 S.W. 361; Algonquin Golf Club v. City of Glendale, 230 Mo.App. 951, 81 S.W.2d 354; Seifert v. City of Poplar Bluff, Mo.App., 112 S. W.2d 93.
And the burden of proof is upon the plaintiff to show lack of lawful reason to support the action of the Board of Aldermen. Hislop v. City of Joplin, 250 Mo. 588, 157 S.W. 625; Central Missouri Oil Co. v. City of St. James, 232 Mo.App. 142, 111 S.W.2d 215; State ex rel. Hart v. Whitaker, Mo.App., 218 S.W.2d 121; Algonquin Golf Club v. City of Glendale, 230 Mo.App. 951, 81 S.W.2d 354; State ex inf. Lashly v. City of Maplewood, Mo. App., 193 S.W. 989; Winter v. City of Kirkwood, Mo.App., 296 S.W. 232.
The courts of this state have many times enumerated the tests to be applied in determining the issue of reasonableness. This court, in Jones v. City of Clayton, Mo.App., 7 S.W.2d 1022, 1024, has said:
"The test to be applied in determining the reasonableness of a proposed expansion of city limits must obviously be largely a flexible one. However, the appellate courts, in the disposition of cases of this character, have made some general observations which are highly pertinent to the matter at hand, to the effect that existing boundaries may properly be extended so as to take in contiguous lands: (1) When they are platted, and held for sale as town lots; (2) whether platted or not, if they are subject to be brought on the market, and sold as town property when they reach a value corresponding with the views of the owners; (3) when they furnish the abode for a densely settled community, or represent the actual growth of the municipality beyond its legal limits; (4) when they are needed for any proper town purposes, as for the extension of streets, sewer, gas, or water systems, or to supply places for the abode or business of its residents, or for the extension of needed police regulation; and (5) when their value is enhanced by reason of their adaptability for prospective town uses."
Appellants contend that when the evidence is viewed in the light of the above principles the conclusion is inescapable that the annexation was unreasonable. In support of this contention it is urged: (1) that the annexed area was not needed by the city to enable its population to expand; (2) that the annexed area was not densely *249 populated, there being only approximately 200 residences in said territory, the majority of which face the roads bordering said area, and the two roads which traverse the interior; (3) that the inner portion of said area was sparsely settled and consisted mostly of vacant land, farms, truck gardens, and homes with large acreage, in which area there were few roads, no water, sewers or gas; (4) that the annexation was not necessary for the opening or extension of roads or streets, nor for the extension of police, health or fire regulations; and (6) that since the City of Crestwood maintained no municipal water, gas or electric system, or sewer facilities, no benefit could accrue to the annexed area.
It is not necessary that all of the conditions which we have named as proper to be considered in determining the question of reasonableness should be present before an annexation will be declared valid. On the contrary, a case of reasonableness is made where it appears that the land annexed is so situated as to be adaptable to urban purposes, and necessary or convenient to a reasonable exercise of the city government. And this is so even though a part of the land is vacant, or a small portion thereof is used for agricultural purposes, State ex rel. Scott v. Lichte, 226 Mo. 273, 126 S.W. 466; State ex inf. Crow v. Fleming, 158 Mo. 558, 59 S.W. 118; Central Missouri Oil Co. v. City of St. James, 232 Mo.App. 142, 111 S.W.2d 215; Copeland v. City of St. Joseph, 126 Mo. 417, 29 S.W. 281; or that a substantial portion is unplatted, State ex rel. Musser v. Birch, 186 Mo. 205, 85 S.W. 361.
While it is true that in the case at bar the evidence shows large areas of undeveloped land in the interior of the area, and a few small farms and truck gardens, we believe that the Board of Aldermen could reasonably conclude that due to the development within the area during the last few years, its close proximity to other crowded areas, and the possibility of further growth, said territory had taken on the character of urban property and properly subject to incorporation into the city. It has been held that the extension of a city's limits should be infrequent and, for that reason, the city should be permitted to look ahead and provide for the development for several years to come. State ex inf. Major, Atty. Gen., Kansas City, 233 Mo. 162, 134 S.W. 1007. It is true that there is considerable vacant land within the original city which renders unnecessary the acquisition of additional territory to enable its population to expand, but this fact alone is not sufficient to defeat the annexation. State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393.
We do not agree with appellants' contention that the evidence conclusively shows that the annexation was not necessary for the extension of police, health, or fire protection. Traffic conditions on Highway 66 certainly called for the extension of police regulation, and the lack of sewers and fire hydrants in the annexed territory called for municipal supervision which would benefit the residents both to the north and south of Highway 66. There will also be benefits to both said areas in the enactment and enforcement of a uniform zoning ordinance and building code, in the fostering of extended water lines, and in the repair and maintenance of roads and streets which the county government under its rules will not do.
After a consideration of the record in this case, and the law applicable, we have concluded that plaintiffs have not met the burden imposed upon them of showing that the action of the city in including the area in question within its limits was so arbitrary, unjust and unreasonable as to amount to an abuse of the discretion which the statute delegates to said city.
The judgment appealed from is affirmed.
BENNICK, P. J., and HOLMAN, J., concur.